## W. J. Leonard v. John B. Haynes.

COUNTY COURT. *Jurisdiction.* The chairman of the county court has no jurisdiction to determine a contest over the office of county superintendent of common schools.

---

### FROM MARSHALL.

---

Appeal in error from the Circuit Court of Marshall county.    W. S. McLemore, J.

Jas. H. Lewis, L. A. Thompson, Jones & Murry and C. T. Swanson for Leonard.

Cowden & Marshall and Miller & Miller for Haynes.

WILSON, Sp. J., delivered the opinion of the court.

This case involves a contest for the office of county superintendent of common schools of Marshall county. It presents several interesting points of law. The facts are agreed upon, and briefly stated, are these :

The county court of Marshall county, on the first Monday of January, 1885, all the justices of the county, thirty-six in number, being present and participating, proceeded to the election of a county superintendent of common schools for the ensuing two years. Leonard and Haynes were the candidates before the body. The court was presided over by the chairman during the election. In taking the vote, the clerk called the roll of the justices, and the sheriff used his hat for the justices to put their ballots in as their names were called. When the clerk called the name of a justice, the sheriff presented his hat before him, and when he put his ballot in it the sheriff announced "voted." When all had voted, the sheriff delivered the hat to the chairman, who would take the ballots from the hat and announce the name of the candidate voted for as shown by the ballots. As each ballot was taken from the hat he would announce the choice expressed by it, and pass it to two members of the court whom he had appointed to assist him in counting or inspecting the ballots. The clerk kept the tally sheet, and at the end of each count would announce to the court the number of votes cast and the number necessary for a choice. There were four ballots taken. On the first, Haynes

got 18 votes, Leonard 17, and one Burrough 1, and the clerk announced that thirty-six ballots had been cast, and that nineteen were necessary to a choice.

On the second, Haynes received 17 votes, Leonard 18, and there was a blank piece of paper with nothing. on it in the hat. The names of the thirty six justices were called by the clerk on this ballot, and each justice, after his name was called, was announced as having "voted" by the sheriff.

The clerk announced, after the completion of the count of this ballot. by the chairman and his assistants, that there had been thirty-five votes cast, and that eighteen votes were necessary to a choice. Upon this announcement by the clerk, some of the justices. claimed that Leonard was elected, and others denied it. The question was discussed *pro* and *con* by members of the court, when the chairman ruled that there had been no election, and his ruling being acquiesced in, another ballot was taken on it. Leonard got 18 votes and Haynes 18, and there being no election, the court adjourned for dinner, and, as parties present jocularly remarked, to allow the candidates further time to electioneer and present their claims.

After refreshing themselves with dinner, the members of the court again assembled, and proceeded to take the fourth ballot. On this ballot Haynes received 19 votes and Leonard 17, when Haynes was declared to have been duly and constitutionally elected, and this declaration was entered on the minutes of the court.

It appears that when the first ballot was taken

both Haynes and Leonard were in the court-room; but during the second ballot Leonard was not in the court-room, and did not hear the vote announced, nor did he hear the third and fourth ballots announced. He learned, however, during the adjournment for dinner, and before the fourth ballot was taken, the facts in regard to the second ballot, and did not go before the court and claim his election on it until after the last ballot and Haynes had been declared elected. He and Haynes were at the door of the court-room just before the fourth ballot was taken, and he remarked to the latter, "this will settle it." Leonard did, however, appear before the court in about a half an hour after the fourth ballot, before the court adjourned, and while all the justices were present, and claim his election under the second ballot.

On January 7, 1885, he served notice upon Haynes that he would contest his election before the county court upon grounds set forth in his petition filed on that date in said court, and in the notice stated that he would ask the court to hear the cause on January 12, 1885. In his petition he claims his election under the second ballot, and that the subsequent ballots were illegal and unauthorized.

Haynes appeared, and moved the court, for reasons set out in his motion, to dismiss the petition. His motion was overruled. He then demurred, and his demurrer was overruled. He then answered, and the cause was heard by the chairman of the county court, who rendered a judgment that Leonard was elected on the second ballot, and that the subsequent ballots

held by the county court were illegal, and the action of the court in declaring Haynes · elected unauthorized, etc.

Haynes had excepted to the action of the chairman in refusing to sustain his motion to dismiss the petition, and overruling his demurrer, and upon the announcement of the judgment of "his Honor" upon the merits, immediately prayed an appeal to the circuit court, which was granted.

Leonard, upon the announcement of the judgment of the chairman, moved the court to qualify him and induct him into office, which was refused because an appeal had been prayed, and to this action of the chairman Leonard excepted. The final judgment of the county court was rendered on January 17, 1885, and two days thereafter, and after his appeal, Haynes subscribed to an oath before the clerk and master of the chancery court of Marshall county to support the Constitution of the United States and the State of Tennessee, and to faithfully perform the duties of county superintendent of public instruction of Marshall county, etc.

The cause was finally heard before his Honor, the circuit judge, on February 16, 1885, upon the whole case, but, by agreement, passing upon the questions raised in the order of their presentation in the county court.

He held that the motion to dismiss the petition for want of proper and sufficient notice, was not well taken. He was of opinion, however, that the demurrer which raised the question of the jurisdiction

of the county court, held by the chairman, to try and determine the issues involved, should be sustained, and accordingly dismissed the proceedings at the cost of Leonard. His action on the demurrer rendered it unnecessary for him to pass upon the other questions made in the pleadings. Leonard has appealed, and the whole case is properly before us.

We agree with the court below that the notice served upon defendant in its form and contents was sufficient. But the question of jurisdiction raised by the demurrer is one of difficult solution. The jurisdiction of county courts is limited. They have what the statutes expressly confer, and no more. And in view of its exercise, most generally by persons without skill or training in a knowledge of the law, we should not extend it by construction: *Dean* v. *Snelling*, 2 Heis., 484; *Young* v. *Shumate*, 3 Sneed, 371; *Bond* v. *Clay*, 2 Head, 379; *Porter* v. *Woodard*, 4 Cold., 599; *Linnville et al.* v. *Darby et al.*, 1 Bax., 310; 2 Head, 257.

The county court, by express law, is given jurisdiction to hear and determine cases involving the election of certain officers: Sec. 1097, M. & V. Rev. Code; but not that of county superintendent of public instruction. And we have been unable to find any statute conferring jurisdiction upon any court or tribunal to adjudicate a contest involving the title and right to this office.

This court held, however, in the case of *Blackburn* v. *Vick*, 2 Heis., 382, in an opinion delivered by Judge Freeman, that in the absence of a specific pro-

vision as to the jurisdiction of a contested election, the court having the power to induct into office had the jurisdiction to determine the validity of the title of the applicant.

This was a contest for the office of revenue collector of DeKalb county, and the jurisdiction was predicated upon the fact that this officer was *inducted* into office by the county court. The power and right to *induct,* under the ruling in this case, existed by virtue of the fact that collectors elected were required at the first county court after their election to enter into bonds and take the oath, and induction into office consisted in executing bonds and taking the oath required before that court. This case was opposed in the case of the *State ex rel.* v. *Burchfield,* 12 Lea, which was a bill filed in the circuit court of Jefferson county under chap. 8, sec. 4146, *et seq.,* M. & V. Rev. Code, charging the defendant, Burchfield, with unlawfully holding the office of director of public schools for a school district in that county.

It is held in this case, citing 2 Heis., *supra,* that the county court had jurisdiction to hear the contest of an election of a school director because it was the duty of the officer holding the election of such directors to certify the result to the county superintendent and the county court clerk, and that this report to said clerk was for the purpose of having the director elect inducted into office by the county court. The duties of school directors are defined by law, but unless the act of 1870, 2nd session, sec. 28, requiring them to take an oath to faithfully

and impartially discharge the duties appertaining to
the office, be still in force, no ceremonial or act of
any kind on their part after the election is required
of them before assuming the office. The opinion is
predicated upon the idea that it was the duty of
directors certified to have been elected to take an
oath before the county court, and that the taking of
this oath constituted an induction into office in this
case. Our statutes provide for the election of a county
superintendent biennially by the county courts, desig-
nate the qualifications he shall possess, who shall pay
him, and define his duties: Secs. 1181, 1182, M. &
V. Rev. Code. They do not provide that his elec-
tion shall be certified to the clerk of the county
court, nor is he required by them to give any bond,
or to take an oath. We think, however, that it is
the duty of these officials under Article 10, Section 1,
of the Constitution, to take the oath therein prescribed,
and under sec. 943, M. & V. Rev. Code, to file their
oaths, with the certificate of the officer before whom
taken, in the office of the county court clerk of their
respective counties.

If correct in this, does the fact that it is the
duty of the clerk of the county court to receive and
file away the oath by the county superintendent, and
before some officer authorized to administer oaths, con-
fer upon the county the power to induct him into office,
or is the mere election of a county superintendent by
the county court, and the reception by its clerk of
the oath taken and subscribed as above stated, an in-
duction into office ? If so, the county court has,

under the decisions cited, the power and jurisdiction to hear and determine this cause. As stated, the jurisdiction of this court should not be extended by construction, and we think the decisions cited extend the implication of power and jurisdiction in it to the full limit authorized by the statutes. Moreover, if the *chairman* of the county court of Marshall county have the jurisdiction to hear and determine this contest, we will have the singular anomaly of the county court of that county, as a court, expressing its judgment or decree, through the justices constituting it, that Haynes was elected county superintendent, and that court, as a court, expressing its judgment or decree, through its chairman, that Leonard was elected.

If it be said that the powers of the county court are ministerial, judicial and legislative, and that in the election of a county superintendent by the justices legislative powers were exercised, and in determining this contest its judicial power is alone invoked, we reply, if this be conceded, that in the absence of statutory limitation, the justices, as a legislative body, can adopt their own methods, not in conflict with the law of the land, of expressing their legislative choice, and if they adopt a method of expressing their will, and under this method, as construed by judicial rules, do express their will, but they decide that they have not, and proceed under their method until they do reach a choice acceptable to their legislative judgment, then this legislative judgment, if not violative of the law, cannot be reviewed and set aside by the courts.

In this aspect of the question it involves an application of the rules of parliamentary law to the facts more than the rules and principles of law in its usual application to the decision of disputed rights. We, therefore, hold that the county court held by the chairman thereof had no jurisdiction or power to hear and determine this contest.

Under this view of the case it is needless to discuss the effect of a blank ballot. In ordinary elections by ballot, as prescribed by law, it was no ballot. Equally useless is it to decide the question of estoppel pressed in the argument.

The judgment should be affirmed with costs.