STATE *ex rel.* JOEL N. PIERCE, COMPLAINANT, APPELLANT, *v.* GEORGE W. HARDIN, DEFENDANT, APPELLEE.

(*Knoxville,* September Term, 1931.)

Opinion filed December 5, 1931.

McMahan & Pierce, W. N. Hickey, Lovette, Berry & Easterly and W. R. Gray, for complainant, appellant.

Susong, Susong & Parvin, for defendant, appellee.

Mr. Justice McKinney delivered the opinion of the Court.

This is a *mandamus* proceeding involving title to the office of County Superintendent of Greene County. The chancellor dismissed the petition, and relator has appealed.

When the quarterly session of the County Court of Greene County met on January 5th of this year both Hardin, the incumbent, and Pierce were placed in nomination for the office. The roll was called and the fifty-three magistrates, constituting the court, voted as follows: For Hardin 27; for Pierce 26. Upon this result being announced by the clerk, the court proceeded to the transaction of other business. When the noon hour arrived the court recessed until one o'clock. During the recess Hardin qualified as county superintendent by executing bond and taking the oath of office as prescribed by law.

In the afternoon of the same day one of the magistrates, who had voted for Hardin at the morning session, made a motion to reconsider the election of a county superintendent, which motion was carried by a vote of 27 to 26. Thereupon a vote was taken and twenty-seven members of the court voted for Pierce. When the names of the other twenty-six members were called each responded "I protest." A few days thereafter this proceeding was instituted. The record presents two ques-

tions: (1) Was Hardin elected at the morning session, and (2) if so, could the court at the afternoon session reconsider what they had done at the morning session and elect Pierce?

The statute authorizing the county court to elect a county superintendent, section 1410 of Shannon's Code, is as follows:

"There shall be a county superintendent for each county, who shall be elected by the county court, biennially, in January, and no member of the county court shall be eligible to said office. He shall be a person of literary and scientific attainments, and of skill in the theory and practice of teaching; shall hold his office for two years, and shall receive such pay for his services as may be allowed him by the county court, to be paid upon the order of the chairman or judge of the county court by the county trustee. He shall be subject to removal from office, for misbehavior or inefficiency at any time, by the county court; but the causes for such removal shall be communicated to him in writing."

One of the magistrates who voted for Hardin at the morning session was L. E. Wells. It is insisted that his vote was illegal because he had been enjoined from voting at that session of the county court. Wells and Kelly had been rival candidates for the office of magistrate in the preceding August election. On the face of the returns Wells was elected, and the election commissioners had issued a certificate of election to him. Kelly had instituted contest proceedings, and this suit was pending in the circuit court when the injunction bill was filed.

This contest was brought before and heard by the Quarterly County Court of Greene County, which

court was without jurisdiction to hear the contest. *Brown* v. *Hows,* 163 Tenn., 138, 40 S. W. (2d) 1017.

■ Section 1 of chapter 5, Acts of 1925, is as follows:

"Any candidate for Justice of the Peace intending to contest the election, shall notify the commissioners of elections of the county in which the election is held of his intention; provided, however, that the commissioners of elections in such case shall not withhold the returns from the Governor or Secretary of State, but shall issue a certificate of election to the candidate entitled to same on the face of the returns, and shall so certify to the Governor and Secretary of State,-and the candidate in whose favor such certificate is issued shall be entitled to his commission as Justice of the Peace, and shall have the right to hold office pending the termination of any contest filed."

Clearly the issuance of the injunction was illegal and Wells was entitled to vote. 32 Corpus Juris 239; *Adcock* v. *Houk,* 122 Tenn., 269; *Hogan* v. *Hamilton County,* 132 Tenn., 554; *State ex rel.* v. *Grindstaff,* 144 Tenn., 554.

■ It is next insisted by relator that Hardin was not legally elected at the morning session because the minutes of the court are the only method by which that fact can be established, and that while the minutes show that Hardin was elected, their introduction as evidence was incompetent because it is shown by the evidence that the minutes of the aforesaid morning session were not authenticated by the presiding judge until sometime after said session of the court had adjourned. There is no doubt but that Hardin received 27 legal votes at the morning session, which was a majority of the court, and the minutes so show. After the minutes had been written

up by the clerk, the county judge appended the following statement thereto:

"I refuse to sign the foregoing entries made as of January 5, 1931, because they are not the correct minutes of the Quarterly Court, except the convening order. Court adjourned to 1:00 o'clock P. M., January 5, 1931.

"J. H. MAUPIN, County Judge."

In explanation of his refusal to sign the minutes, Judge MAUPIN testified that the only error in the minutes was the statement, following the announcement of the clerk that the vote was 27 to 26 in favor of Hardin, "Judge MAUPIN then said 'if allowed to vote I will vote for Pierce and tie it.'" According to Judge MAUPIN what he did say was if there was a tie he would vote for Mr. Pierce, but there was no tie and hence this is an immaterial matter.

The minutes which Judge MAUPIN declined to sign recorded the action of the court with respect to many other appointments and other matters passed upon by the court. When the quarterly court met on April 6, 1931, they passed a resolution requiring the clerk to read the minutes which the county judge had refused to sign to the court, which was done, and they thereupon approved the minutes and requested the county judge to sign same, which he did on April 21st following. So that the minutes when offered in evidence had been authenticated by the presiding judge. But it is insisted that the authentication of the minutes after the adjournment of the session was void, and counsel cites section 5913 of Shannon's Code, which is as follows: "The minutes of the court shall be read each morning in open court, and signed by the judge."

In 15 Corpus Juris 973, it is said: "It is generally required by statute that the records or minutes of a court shall be signed by the judge, but such statutes are considered to be directory only."

Such was the effect of the holding of this court in *Moore* v. *State,* 50 Tenn., 493. In the brief of the attorney-general in that case, appearing on page 495, will be found a reference to numerous decisions holding similar statutes directory only.

It is generally held that the court can make an entry *nunc pro tunc* after the term at which the transaction occurred. 15 Corpus Juris 972; *Rush* v. *Rush,* 97 Tenn., 279. Necessarily the authentication of such an order would have to be made at a subsequent term. If relator's contention is sound, then this could not be done, and an order *nunc pro tunc* could never become effective. The authorities cited by counsel for relator upon this question are cases in which it was attempted to establish the action of the court by parol testimony in the absence of any minute entry.

We are of the opinion that the evidence fully establishes the fact that Hardin was elected superintendent at the morning session of the court. This being true, Did the court have the power at the afternoon session to reconsider the matter and elect Pierce? Under the authorities it would seem that this depends on whether the county court was exercising a legislative function in electing a county superintendent, because if it was, under parliamentary practice, it had a right to reconsider and elect another. On the other hand, if this was a departure from its ordinary work, and in the selection of this official it was exercising a political or executive power,

then such power was exhausted when it elected Hardin at the morning session.

In a written opinion filed at Knoxville at the September, 1923, term in the cause of *State ex rel. Ruth W. O'Dell* v. *G. G. Thomas et al.,* from the equity docket of Cocke County, it was said:

"It is therefore perhaps unnecessary to decide whether or not the court had power to reconsider its action after an election had been had and its acceptance received by the electee, but there is ample authority for the conclusion that the power of the county court having been thus exercised had become exhausted and that this character of action was not subject to reconsideration."

In *Richardson* v. *Young,* 122 Tenn., 471, 493, it was said:

"The constitution does not define in express terms what are legislative, executive, or judicial powers.

"Theoretically, the legislative power is the authority to make, order, and repeal; the executive, that to administer and enforce; and the judicial, that to interpret and apply, laws."

The lack of power to reconsider an appointment to office was declared at an early date by the Supreme Court of the United States in *Marbury* v. *Madison,* 1 Cranch, 137, 167. The President had appointed Marbury a justice of the peace, but his commission had been withheld. In holding that Marbury was entitled to the office, the court, speaking through Chief Justice MARSHALL, said:

"The power of nominating to the senate, and the power of appointing the person nominated, are political powers, to be exercised by the President according to his own discretion. When he has made an appointment, he has exercised his whole power, and his discretion has been

completely applied to the case. If, by law, the officer be removable at the will of the President, then a new appointment may be immediately made, and the rights of the officer are terminated. But as a fact which has existed cannot be made never to have existed, the appointment cannot be annihilated; and consequently, if the officer is by law not removable at the will of the President, the rights he has acquired are protected by the law, and are not resumable by the President. They cannot be extinguished by executive authority, and he has the privilege of asserting them in like manner as if they had been derived from any other source.''

This is a leading case and has been approved in many jurisdictions.

In 19 Ruling Case Law 900, it is said: ''A municipal council has, however, no power to reconsider its action in electing a municipal officer. When the vote is announced by the clerk the right of the person elected to be inducted into the office is fixed, and the members cannot afterward change the result by changing their votes, or by passing a resolution declaring another party to be elected.''

In 2 *Dillon, Mun. Corp.* (5 Ed.), sec. 529, it is said: ''The weight of authority is also to the effect that, when a completed vote has been taken which results in the giving of the necessary majority or plurality to one of the candidates, the council cannot rescind its vote or reconsider its action and elect another person.''

In *Hadley* v. *City of Albany* (N. Y.), 88 Am. Dec., 412-413, it was provided by statute that the city council should canvass the returns, and determine and declare the result in the election of a mayor. This was done, but later the returns were again canvassed with a different result. In holding the latter action illegal, the court said:

''The meaning as it stands in the statute-book is, that the canvass shall be made at some meeting of the common council after the election. It was regular and legal to perform that duty at the first meeting, and this was what was done, as stated in the certificate. Having been once legally performed, the power of the council was exhausted; the board had no right to reverse its decision by making a different determination.''

In *State* v. *Barbour,* 53' Conn., 76, 55 Am. Rep., 65-66, the charter of the City of Hartford provided that the common council shall provide a prosecuting attorney. Relator Coogan was elected, but on reconsideration Barbour was elected. The court, in holding that Coogan was entitled to the office, said:

''In behalf of the relator it is contended that the vote of the convention to proceed to ballot for a prosecuting attorney was equivalent to, and must be regarded as, a vote to elect or appoint a prosecuting attorney by ballot; that when the result was announced the appointment was complete, nothing more being required; that the relator thereby acquired a vested right to the office, and that it was not in the power of the convention by its subsequent proceedings to deprive him of it.

''We are inclined to think that the view presented by the counsel for the relator is the better one.''

In *State* v. *Miller,* 62 Ohio State, 436, 78 Am. St. Rep., 732-733, the city council of Greenville elected relator Calderwood city clerk. On motion to reconsider they elected Miller. In holding that relator was entitled to the office, the court said:

''But the vote having been cast and the result having been announced to the council by the clerk, by which it was apparent that the relator had received a plurality

of the votes cast, the function of the council was discharged: *State* v. *Anderson*, 45 Ohio St., 196. The election was complete. The formality of a declaration by the presiding officer of the council could neither add to nor detract from the thing which had already been done. The right of the relator to qualify and to be inducted into the office was fixed *eo instanti*.

"The council was engaged in the duty of electing officers, a duty imposed on the members thereof, not on the body as a council. They were not engaged in the deliberative business which is the ordinary work of the council, but in the election of a city officer. They were not acting under parliamentary law, but were casting their votes and making their choice as required by a specific statute. They could make this choice but once. Having done so they could not reconsider it."

*State* v. *Tyrrell*, 158 Wis., 425, Ann. Cas. 1916E, 270, 273, involved the election of a city attorney by the city council of Lake Geneva. The court said: "Moreover, after the election of relator, acceptance of the office, and qualification by him, the council had no power to reconsider and elect another."

Counsel for relator relies upon *State* v. *Foster*, 7 N. J. L., 101, and *Wood* v. *Cutter*, 138 Mass., 149. In the former the decision was rendered from the bench and was based upon the idea that the joint session of the legislature in electing a clerk of the Common Pleas of the County of Gloucester was performing a legislative function, which is contrary to the holding of this Court in *Richardson* v. *Young, supra*. With respect to this case the Connecticut Court, in *State* v. *Barbour, supra*, said: "We cannot regard that case as an authority controlling or materially influencing our decision, for several reasons.

It was hastily decided and manifestly was not well considered. It confounds legislative proceedings with executive acts and applies the rules regulating the former to the latter, while such rules are applicable only to a limited extent. It assumes that the convention had power to undo as well as to do, to remove as well as to appoint. That may have been so in that case, which confessedly it is not so in this."

It is proper to remark that the power of the County Court of Greene County to remove a county superintendent is limited, and can only be done for inefficiency or misbehavior in office; the causes for such removal to be communicated to him in writing.

The Massachusetts case referred to likewise proceeds upon the assumption that the school committee in the selection of a superintendent was performing a legislative function.

Several cases have been cited dealing with the power of a legislative body to reconsider the confirmation of an appointment to office made by an executive. Upon this question the authorities are in conflict, as will be seen from the annotation in 2 A. L. R., 1657. Where the power to reconsider is upheld it is upon the ground of special statutory authority. For example, in *People ex rel. Mac-Mahon* v. *Davis* (Ill.), 2 A. L. R., 1650, 1654, the city council had adopted a rule which provides as follows: "A vote or question may be reconsidered at any time during the same meeting or at the first regular meeting held thereafter. A motion for reconsideration having been once made and decided in the negative shall not be renewed, nor shall a vote to reconsider be reconsidered." The court held that under this rule, and others which the council had adopted, they could reconsider the con-

firmation of members of the school board who had been nominated by the mayor.

Our attention has also been directed to the decisions of this court in *Leonard* v. *Haynes,* 82 Tenn., 447, and *Donnelly* v. *Fritts,* 159 Tenn., 605. In the first named case the question involved was the jurisdiction of the chairman of the county court to determine a contest over the office of county superintendent. The court held that he was without jurisdiction. Responding to the contention of counsel that in the selection of a superintendent the court was exercising legislative powers, the court said that if this be conceded the justices as a legislative body could adopt their own methods of expressing their legislative choice.

In the last named case there was a controversy as to whether Donnelly or Fritts was elected superintendent at the January, 1929, term. A contest was instituted and the county court at the following April term held that Fritts was elected. This court held that the judgment of a county court in such a case is not reviewable except where the court has acted illegally and beyond its authority. In the opinion it was said:

"The hearing of this contest by the Quarterly County Court at its April, 1929, term really involved a determination by that body as to whether proper rules of procedure had been followed in the election of the County Superintendent at the previous January term. If the justices concluded that their former procedure was irregular, not in accordance with parliamentary practice or their own methods of transacting business, it was within their province to reconsider their former action. The legislative judgment of the quarterly county court upon a matter of this character, 'not in conflict with the law of the

land,' as said in *Leonard* v. *Haynes,* may not be reviewed by the courts.

"The case before us is to be distinguished from cases in which the quarterly county court has acted illegally and beyond its authority. Such action as that can of course be reviewed in courts upon proper procedure. This case is merely one in which the justices have declared that action appearing to have been taken by them formerly was irregular and not an expression of their will and in which they proceeded by a method within their competency to declare their real intent."

In the instant cause there is no insistence that the action of the county court in electing Hardin at the morning session was irregular and not an expression of the will of the members, but the action of the court in reversing itself is predicated solely upon the proposition that as a legislative body it had a right after the election of Hardin, his acceptance of the office and qualification, to reconsider and elect Pierce. Both upon principle and authority we think this should not be permitted. The election of an official by a legislative body is frequently characterized by a bitter, partisan contest, in which much wire pulling and lobbying is resorted to. Until the contest is settled it incapacitates the legislators for looking after and attending to the many duties devolving upon them. After the contest has been waged and the will of the members expressed the result should be final. Where, as in this cause, the vote is close, if the legislators are permitted to reconsider the appointment, it affords an opportunity for corrupt bargaining and a resort to coercive tactics, which should be discouraged. We may add that so far as we are aware the State Legislature in appointing officials has never attempted to reconsider

their appointment, thus recognizing the finality of such action when once their will is expressed.

The chancellor was of the opinion that relator was not entitled to the relief sought and dismissed his petition, and for the reasons stated herein his decree will be affirmed.