STATE *ex rel.* KEMPSON *v.* MOORE.

(*Nashville*, December Term, 1933.)

Opinion filed January 13, 1934.

H. D. Derrick, of Lawrenceburg, for appellant.

W. H. Lindsey, of Nashville, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a mandamus proceeding brought on the relation of Kempson to require the defendant, Moore, to surrender to relator the office of chairman of the highway commission of Lawrence county, together with all the papers, books, records, and emoluments pertaining to that office, and the petition also prays for all such other general, special, and specific relief to which, according to law and upon the facts set forth, relator is entitled. Answer was filed by the defendant, much proof taken, and the chancellor decreed in favor of the relator and

awarded him the office. From this decree defendant appealed.

The highway commission of Lawrence county is organized under chapter 54 of the Pub. Acts of 1929, Code section 3278 et seq., which authorizes a county highway commission of three "to be elected by the county court." The act also provides that one of those elected "shall be named as chairman by the county court." The petition avers relator, Kempson, was duly elected as a member of the Lawrence county highway commission at the January, 1930, session of the quarterly county court for a term of three years, and that he was likewise named as chairman of said commission by said quarterly county court, that he was a candidate for re-election to said office at the January, 1933, term of the quarterly county court, and that defendant, Moore, and others were also candidates for said office before said body at that time. The relator alleges that he was re-elected on the 1st day of the January, 1933, term, but that defendant, Moore, is claiming the office.

The basis of the relator's claim, as well as the claim of defendant, clearly appears by extracts from the minutes of the county court of Lawrence county, set out in the petition. A point is made that the minutes, from which these extracts are taken, were not signed by the county judge until some days later. This delay in signing, however, does not impeach the integrity of such minute entries. *State ex rel.* v. *Hardin,* 163 Tenn., 471, 43 S. W. (2d), 924. The minutes of the first day of the January term showed a *quorum* of the county court present and, after certain other entries, the following appears:

"Motion made, seconded and carried to at this time,

for the regular term of three years, elect a highway commission. Those nominated J. A. Moore, J. L. Nation, L. B. Springer, T. M. Kempson, J. C. Keplinger.''

A record of the vote then follows showing that Nation received 8 votes, Springer 2 votes, Kempson 15 votes, Keplinger no votes, and Moore 4 votes. Thereupon the minutes recite: ''Kempson declared elected upon above vote.'' This minute entry, of date January 2, 1933, also contains the following:

''On the succeeding day (Jan. 3, 1933) this record of vote corrected so as to show that Gobble voted for Moore, leaving Kempson with 14 votes—not a majority.''

The entry also recites the vote as corrected showing Nation with 8 votes, Springer with 2 votes, Kempson with 14 votes, Keplinger with no votes, and Moore with 5 votes. The minute entry contains the words ''corrected following date.'' The last entry on the minutes of January 2 is:

''On motion made, seconded, and carried the court adjourned to meet tomorrow, January 3rd, 1933, at nine o'clock A. M. for a second day's session.''

On the next day, January 3, 1933, the court met pursuant to adjournment, and in the minutes of the second day's proceedings is this entry:

''C. L. Gobble appeared and stated in open court that during the afternoon session of the proceedings of yesterday, January 2, 1933, and during the voting on the election of a county highway commissioner, he voted for Moore and that the record of that vote erroneously showed his vote for Kempson, and that while the clerk repeated each vote as understood by him, he did not hear his vote repeated as for Kempson, and wanted the record corrected to show his vote for Moore, and on motion

thereupon made by Gobble, seconded by Watkins, and carried, it was ordered that the clerk's record on roll call sheet of said vote on said election of yesterday be corrected as amended so as to show that Gobble voted for Moore and that no nominee in that election rec'd a majority of the votes present, and that the court proceed to another vote on the nominees for commissioner who were nominated and voted on yesterday and to continue to vote until some candidate received a majority of the votes present. The chair declared such motion carried and that the court proceed to another vote.''

The minutes then recorded the following:

''The names of J. L. Nation, L. B. Springer and J. C. Keplinger withdrawn with consent of seconders of their nominations, and on motion made, seconded and carried, it was ordered that vote be had on the two remaining candidates—Moore and Kempson—for election as county highway commissioner and the vote follows.''

The talley sheet is then included showing Kempson to have received 14 votes and Moore 15 votes, and it is recited ''Moore declared elected.''

Much proof was taken as to how Squire Gobble had really voted on the first day of the term, whether he had really voted for Moore or for Kempson. The chancellor excluded so much of the proof as tended to impeach the record of Gobble's vote made on that day. The chancellor was of opinion that this record of the first day's proceedings was conclusive of the matter, that Kempson must be held to have been duly elected on January 2, and that the county court was without authority on January 3 to reconsider or annul this action. The chancellor was further of opinion that the county court lacked authority to hold an election of this sort on January 3 because of

the statutory provisions (Code, section 1907) requiring the election of county officers to be held by the county court on the first day of the term, or on some subsequent day (Code, section 1909) to which the meeting of the court had been adjourned for that purpose.

The argument of the relator to sustain the decree of the chancellor rests largely on authority of *State ex rel.* v. *Hardin,* 163 Tenn., 471, 43 S. W. (2d), 924, 927. In that case it was held that, after the quarterly county court had elected a county superintendent of schools at one session, such body was without power to reconsider its action at a later session, because in making such selection the quarterly county court was exercising a political or executive power, which power was exhausted when the election was once made. This conclusion was well considered and well supported by authority, but the ruling does not reach the case before us.

It was noted by Justice McKINNEY in *State ex rel.* v. *Hardin* that "there is no insistence that the action of the county court in electing Hardin at the morning session was irregular, and not an expression of the will of the members, but the action of the court in reversing itself is predicated solely upon the proposition that as a legislative body it had a right after the election of Hardin, his acceptance of the office, and qualification, to reconsider and elect Pierce."

The very essence of the defense here is that the action of the Lawrence county court in the session at which Kempson appeared to have been elected "was irregular and not an expression of the will of the members." The decision in *State ex rel.* v. *Hardin* was not designed as a precedent in a controversy like the one before us. This

plainly appears from the authorities followed in that opinion.

One case approved and quoted at length in *State ex rel.* v. *Hardin* was *State* v. *Barbour,* 53 Conn., 76, 22 A., 686, 688, 55 Am. Rep., 65, and in the latter case the Connecticut court qualified the opinion, dealing with an election by a city council, by saying:

"We do not wish to be understood as denying the power of the convention to correct errors and to nullify the effects of fraud. If there was a palpable error or fraud, or if the ballot for any cause was illegal, the convention might undoubtedly treat it as void, and proceed to another election."

*State* v. *Tyrrell,* 158 Wis., 425, 149 N. W., 280, 283, Ann. Cas., 1916E, 271, another case approved in our former decision, dealing with the election of an officer by a municipal council, contained this observation:

"It is true that in case of mistake or fraud in the taking of a ballot another ballot may be taken and the irregular or fraudulent one rejected. *State ex rel.* v. *Starr* (78 Conn., 636, 63 A., 512), *supra.* But no such case is here."

*State ex rel.* v. *Starr,* 78 Conn., 636, 63 A., 512, 513, mentioned by the Wisconsin court, involved the election of a municipal officer by a city council by ballot. It appeared that on the first ballot one more ballot was cast than there were members of the council present, although one of these ballots was blank. On the first ballot the relator received a plurality, which under the law was sufficient vote to elect him. When it was disclosed that there were too many ballots cast, the council determined that another ballot would be taken. Three more ballots were taken, and on the fourth ballot the defendant received a

plurality. The contest for the office was between the relator, receiving the plurality on the first ballot, and the defendant, receiving the plurality on the fourth ballot. The Connecticut court recognized fully the authority of its previous decision, *State* v. *Barbour, supra,* saying that: "When an appointment is vested in a legislative body with direction to make its choice by ballot, the appointment can be made only by ballot, but in the manner of taking the ballot and in all other matters relating to the completion of the choice, the body proceeds as a legislative body having the discretion and powers (subject only to the limitation) belonging to such body." After some further discussion, the court said:

"Upon principle it seems to us clear that the common council, upon discovering that more ballots including one blank ballot had been cast than there were persons voting, had the power to exercise its discretion whether to make an investigation then and there, which might require each member to declare how he voted, or to assume that the evident irregularity was harmless, or to exclude all suspicion of fraud by allowing each member to again cast his ballot; that in pursuing the latter course the council reasonably exercised its power as a legislative body in expressing its will by ballot; that this course was properly taken by each member participating in another ballot; and that having thus exercised its discretion the process of appointing or electing a city surveyor by ballot was not completed until the result of the ballot appointing the respondent was ascertained as admitted by the pleadings. *Baker* v. *Cushman,* 127 Mass., 105; *State* v. *Phillips,* 79 Me., 506, 11 A., 274; *Wood* v. *Cutter,* 138 Mass., 149."

Section 1908 of the Code provides: "In making all

elections and appointments coming before the county courts, the vote of the justices present shall be taken by ayes and nays, the clerk calling and recording the name of each justice, together with his vote, aye or nay, as it is given, which shall be entered on the minutes, together with the names of the persons elected or appointed.''

■ ■ It is true, as said in *State ex rel.* v. *Hardin,* *supra,* that election of a county officer by the county court is a political function, and that, when the power is once exercised, that power is exhausted. Neveretheless the county court is a legislative body in its organization. Although the statute commits to this body the exercise of a political power, the character of the body is not changed. Certain things are necessarily left to the determination of the county court—whether the clerk correctly records the vote of a justice as his name is called, whether the votes recorded are correctly added, and other details of the conduct of the election, not covered by the statute. In settling these details, by reason of the very nature of the body, the county court must proceed as other legislative bodies do. The statute requires the county court to choose county officers in a prescribed manner. Having once determined its choice that choice is irrevocable. It remains, however, for the county court itself to say whether its choice as expressed has been correctly recorded. We are unable to assent to the proposition that the statute denies the county court, proceeding as a legislative body, power to correct a mistake of its clerk in recording the vote cast by its members, if the correction is seasonably undertaken according to the usages of a deliberative assembly. The rights of no third parties have intervened in the case before us.

The relation had on January 3 qualified for the new term, if this would make any difference.

■ ■ The conclusion is quite in accord with the decisions of the court in *Donnelly* v. *Fritts,* 159 Tenn., 605, 21 S. W. (2d), 619, and *Leonard* v. *Haynes,* 82 Tenn. (14 Lea), 447, election contests, involving, however, only questions of parliamentary procedure. As shown in those cases, the action of the county court proceeding in a legislative capacity is not subject to review by the courts. In reaching its conclusion that its clerk had failed to truly record the vote of the justices cast on the first day in this election for highway commissioner, the county court of Lawrence county proceeded in a legislative capacity, and we think this conclusion is final.

We agree with the chancellor, however, that the county court was without power to enter into this election on the second day of the term. The election of county officers by the quarterly county court is rather carefully regulated by statute. As mentioned before, section 1907 makes it the duty of the court, when an officer is to be elected, or a vacancy filled, "to hold an open election on the first day of the term, admitting all citizens to the privilege of offering as candidates, except such as are prohibited by the constitution or the laws of the State."

Section 1909 of the Code is: "The court may, however, a majority of the justices consenting, adjourn the election to a subsequent day of the term."

Section 1910 of the Code provides: "The presiding officer of the county court shall cause public notice to be given in a newspaper of general circulation in the county at least one week before the meeting of the court, specifying the offices to be filled at that court."

The intent of the Legislature obviously was to insure full publicity to all elections held by the county court and notice to all parties interested. If not completed on the first day of the term, the court may "adjourn the election to a subsequent day of the term." There was nothing done here by way of adjourning the election. On the contrary, it was assumed on the first day that the election had been consummated. The public and the candidates naturally so thought. We are of opinion, therefore, that there was no valid election of defendant, Moore, to this office on the second day of the term, and that at present Kempson is a holdover, with the right to the office until his successor is elected.

The situation then presented is similar to that before the court in *State ex rel. Tidwell* v. *Morrison*, 152 Tenn., 59, 274 S. W., 551. The obligation still rests upon the quarterly county court of Lawrence county to elect a successor to the highway commissioner elected at its January, 1930, term, and that duty may be discharged at the first meeting of said body occurring after proper notice (Code, section 1910) of this election has been given. Such election may be held at a regular meeting of the quarterly county court or at a special meeting of the quarterly county court properly called under section 10195 et seq. of the Code.

The relator is entitled, as a holdover, to the possession of the office, but only until another election is held by the county court of Lawrence county and his successor chosen for the unexpired term.

Modified to this extent, the decree of the chancellor is affirmed. One-third of the costs so far accrued will be taxed to Kempson and two-thirds to Moore.