TOM COBB et al., Appellant, v. LESSIE COBB
BROWN et al., Appellee. —305 S. W. (2d) 241.

Western Section.    August 23, 1956.

Petition for Certiorari denied by Supreme Court December 7, 1956.

596

Hughie Ragan, Jackson, for appellants.

E. J. Harris, Bolivar, for appellees.

CARNEY, J. The complainant below, Tom Cobb, appeals from a decree of the Chancery Court of Hardeman County dismissing his suit in which he sought to be declared the owner of 106 acres of land in Hardeman County.

On March 22, 1919, the complainant Tom Cobb's wife, Anna Cobb, obtained a divorce against him on the grounds of adultery in the Chancery Court of Hardeman County which he did not defend. At the time of the divorce the complainant, Tom Cobb, was the owner in fee simple of a tract of land containing 20 acres and another tract of land containing 82 acres. Said tracts of land lie together and were generally referred to as Tom Cobb's 100-acre tract of land.

The divorce decree contained the following provisions with reference to homestead, alimony and costs:

"3rd. It is further ordered, adjudged and decreed that the title to the homestead be divested out of the defendant and vested in complainant during her life and after her death it shall pass to and be vested in Mary Spencer, Pearl, Lessie, Thomas Henry, John

McKinley, Dosie, Elmer Jones, Otho and Lady Cobb, the children of complainant by defendant, and that said homestead be set apart to complainant out of the 100-acre tract of land described in the bill, situated in the Civil District No. 8, of Hardeman County, Tennessee, and bounded on the north by Thomas; on the south by Johns; on the east by Cearley; and on the west by Chandler; that A. M. Cearley and R. D. Thomas, free-holders of the County, and R. L. Ray, the County Surveyor, all of whom are unconnected by affinity or consanguinity with any of the parties, are appointed commissioners to allot and set apart to said complainant, Anna Cobb, out of said tract of land: First, a homestead of the value of $1000.00. Said commissioners will also allot and set apart to the said complainant, Anna Cobb, one-half of the remainder of said lands, quantity and quality, relatively considered, as alimony given her in this cause. The commissioners will make their report accompanied by a plat to the present or next term of the Court.

"Complainant is also given as alimony one-half of the remainder of said tract of land, after the homestead has been set aside to her, as herein provided, and also all the household and kitchen furniture in the family residence on said lands, and all the corn, hay, fodder, cotton, cotton seed, sorghum, and all other crops belonging to the defendant raised during the year 1918, and all the pork or bacon, now on hand, and eight head of hogs, now on hand, and all the poultry and one wagon and harness, and also four mules and one horse, and five head of cattle. Said cattle and mules, horses and hogs are given to complainant subject to the mortgage liens of J. E. Nuck-

olls and G. L. Bradford, the proof showing that they have a trust deed on said livestock executed by the defendant to secure certain indebtedness. The title to said lands given complainant as alimony and the title to the said personal property is divested out of the defendant and vested in the complainant.

"4th. The defendant will pay H. E. Carter, Esq., the solicitor of complainant, $50.00 his fee in this cause for services to this date, and will also pay all the cost of this cause. Execution will issue to enforce the payment of said sum of money and said cost, and a writ of possession will issue to put complainant in possession of all the property, real and personal, decreed to her. The exclusive custody of Pearl, Lessie, Thomas Henry, John McKinley, Dosie, Elmer Jones, Otho and Lady Cobb, the infant children of the parties is committed to complainant, but the defendant is granted the privilege of supporting said children, but the defendant is perpetually enjoined from interfering with or removing said children, or any of them, out of the custody of complainant or in any way interfering with complainant in control of said children.

"5th. This cause will be retained in Court for the enforcement of this decree whenever necessary and either party has leave to reply.

"6th. Upon application a lien is hereby declared in favor of H. E. Carter on the said land of defendant not given complainant as homestead or alimony." The following notation appears upon the minutes: "Thereupon court adjourned until——

"J. W. Ross."

On the minutes of the Chancery Court of date June 10, 1919, was entered a decree purporting to confirm the report of the commissioners laying off 69.4 acres to the wife, Anna Cobb, as homestead and 20.6 acres to Anna Cobb as alimony and the said report recited that the remainder of the Tom Cobb lands amounts to 16.1 acres. Apparently the Tom Cobb tract of land contained 106 acres instead of 102 acres but this discrepancy is not material to the determination of this appeal.

From said decree entered of date June 10, 1919, we copy as follows:

"And said report not being excepted to, is in all things ratified and affirmed by the court. ·

"It is therefore, ordered, adjudged and decreed by the court that all the right, title, interest of defendant, Tom Cobb, in and to the 69.4 acres of land set apart to complainant as her homestead, be and the same is hereby divested out of him and vested in the complainant, Anna Cobb, for and during the term of her natural life, as a homestead, and that the remainder interest in said homestead be and the same is hereby vested in Mary Spencer, Pearl, Lessie, Thomas Henry, John McKinley, Dosie, Elmer Jones, Otho and Lady Cobb, the children of complainant by defendant and their heirs and assigns forever.

"It is further ordered and decreed by the court that all the right, title and interest which the defendant, Tom Cobb, has in and to the 20.6 acres of land, allotted and set apart to the complainant, Anna Cobb, as alimony, by said commissioners, be and the same

is hereby divested out of him and vested in the said Anna Cobb, her heirs and assigns forever.

"It is further ordered and decreed by the court that a lien is hereby declared to exist upon the remainder of the lands of the defendant, Tom Cobb, of 16.1 acres, to secure the payment of the cost of this cause including a fee of $50.00 to H. E. Carter, Esq., as solicitor for complainant, and also the cost of setting apart to complaint her homestead and alimony, as shown by the cost bill of R. L. Ray, Surveyor, filed in this cause, and enforcement of said lien and in satisfaction of said cost and solicitor's fees said 16.1 acres of land to be sold according to law, and that the Clerk & Master sell said land for cash, after advertising the time, terms and place of sale by written or printed handbills, posted as required by law for twenty days, and report his action to the present or next term of this court."

On September 13, 1919, there was entered on the minutes of the Chancery Court a decree confirming the Clerk & Master's report of sale of the 16.1 acres of land referred to as the remainder tract to Anna Cobb at a price of $240. Said decree sets out the description of said tract of land by metes and bounds and expressly recites: "It is therefore ordered, adjudged and decreed by the Court that all the right, title interest and estate which the defendant Tom Cobb has in and to said tract of land be and the same is hereby divested out of him and vested in the purchaser Anna Cobb her heirs and assigns forever."

The complainant, Tom Cobb, took no part in any of the legal proceedings and left Tennessee and went to

Illinois and has been a non-resident of Tennessee continuously from 1919 to 1955 when the original bill below was filed. Anna Cobb continued to live on the entire 106 acres until her death in 1954. As the children became grown and married they all moved away except one son, Thomas Henry Cobb, who continued to live on and farm the land with his mother and at the time of the filing of the bill below he was living on and farming the land.

This same son, Thomas Henry Cobb, joined in the original bill with his father agreeing that his father was the owner of the entire tract of land after the death of his mother, Anna Cobb, in 1954. The other children of Anna Cobb and Tom Cobb were impleaded and only one child, Lessie Cobb Brown, resisted or defended the bill brought by Tom Cobb and his son, Thomas Henry Cobb. She insisted and the Chancellor so found that the complainant, Tom Cobb, had no interest of any kind in said land.

The lands continued to be assessed on the tax rolls under the name of Tom Cobb. The meager testimony in the record indicates that Anna Cobb paid some of the taxes and that her son, Thomas Henry Cobb, who was farming the place, paid most of the taxes and this son, Thomas Henry Cobb, testified that his father sent some money back to him to see that the taxes were paid.

The principal grounds of Tom Cobb's appeal are: (1) The homestead tract of land was decreed to Anna Cobb only for life and that upon her death, all of the children being over 21, Tom Cobb was entitled to the reversion in said homestead tract. (2) The minutes of the Chancery Court continuing the decree of date June 10, 1919, confirming the report of the commissioners laying off

homestead and alimony, etc., were not signed by the Chancellor nor was the original decree itself which was entered of date June 10, 1919, signed by the Chancellor. (3) That while the minutes containing the decree of September 13, 1919, confirming sale of the 16.1-acre remainder tract to Anna Cobb were signed by the Chancellor yet the Chancellor had no authority to sell the 16.1-acre tract because the divorce decree of date March 22, 1919, had become final and did not expressly provide that the remainder tract would be sold and that no additional process was issued and served on Tom Cobb authorizing or permitting the sale of the 16.1-acre remainder tract.

With reference to the 16.1-acre remainder tract it is our opinion that the owner Tom Cobb became thoroughly deseized of this tract of land in 1919 when his wife divorced him and took the land and the children and he went to Illinois. She held said remainder tract of 16.1 acres for more than thirty years under a decree of the Chancery Court purporting to convey her an estate in fee simple and therefore under the provisions of Tennessee Code Annotated sec. 28-205 Anna Cobb died seized and possessed of the fee simple title to said 16.1 acres of land. Upon her death this land descended to her heirs and Tom Cobb, the divorced husband, was entitled to no interest in said land.

T. C. A. sec. 28-205. "Indefeasible title by possession under assurance of title.—Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom he claims having been in adverse possession of same for seven (7) years, where said real estate is held and claimed by him or those through

whom he claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein. (Acts 1923, ch. 90, sec. 1; Shan. Supp., sec. 4460a1; Code 1932, sec. 8586.)''

■ We are compelled respectfully to disagree with and overrule the contention of the complainant that the decree of June 10, 1919, was invalid because the Chancellor failed to sign the minutes containing such decree.

Tennessee Code Annotated sec. 16-106 which was also in effect in 1919 provides as follows:

''16-106. Minutes.—The minutes of the court shall be read each morning in open court, and signed by the judge. (Code 1858, sec. 4101 (deriv. Acts 1809 (Sept.), ch. 49, sec. 20); Shan. sec. 5913; Code 1932, sec. 10112.)''

We think this question is controlled by the ruling of our Tennessee Supreme Court in State ex rel. Pierce v. Hardin, 1931, 163 Tenn. 471, 43 S. W. (2d) 924, which expressly held that the above quoted section was not mandatory but only directory. See also Jackson v. Jackson, 1878, 3 Tenn. Cas. (Shannon) 18, 19, and Crum v. Fillers, 1926, 6 Tenn. App. 547.

It is true that in 1871 our Supreme Court of Tennessee in the case of Johnson v. Johnson, 49 Tenn. 521, 524, held in substance, that the minutes of the Court were void because not signed by the Court. However, the very next year in the case of Moore v. State, 1872, 50 Tenn. 493, it was held that the minutes of the Court were valid even though the Trial Judge died before having an opportunity to sign. Chief Justice Nicholson who wrote the opinion in the case of Johnson v. Johnson, supra, concurred in the opinion written by Judge Freeman in Moore v. State. Judge Sneed, in Moore v. State, dissented and expressly referred to the holding of the Court in the case of Johnson v. Johnson the previous year. Therefore, it would appear that for all practical purposes Johnson v. Johnson was overruled by the Supreme Court in Moore v. State.

There are expressions contained in the case of Fraker v. Brazelton, 80 Tenn. 278, to the effect that a decree of the Court is not effective until it is entered on the minutes and the minutes have been signed by the Judge. This quotation has been repeated and approved in several Tennessee cases; the most recent in the case of Bernard v. Walker, 1948, 186 Tenn. 617, 212 S. W. (2d) 600, 602. However, we observe that in each of those cases the decree under question had not been entered on the minutes and therefore we do not think they are controlling in the case at bar.

Since our preparation of the above portion of this opinion we have read the case of Duboise v. State of Tennessee rendered by the Supreme Court of Tennessee on April 27, 1956, reported in 290 S. W. (2d) 646, 647, in which our Tennessee Supreme Court has most recently

reaffirmed State ex rel. Pierce v. Hardin, supra, and held that the decree of the Court was not invalidated because of failure of the Trial Judge to sign the minutes.

Therefore, we hold that the decree of June 10, 1919, was effective as a muniment of title of Anna Cobb under which she held possession of the alimony tract of land continuously from 1919 to her death in 1954. Hence, under the provisions of Tennessee Code Annotated sec. 28-205 her title to said land in fee simple became indefeasible after thirty years and the complainant, Tom Cobb, has no interest therein.

■ Moreover, we are of the opinion that regardless of the period of limitation that Tom Cobb has no interest in the 20-acre alimony tract under any theory. The divorce decree of March 22, 1919, expressly divested title out of Tom Cobb and vested title in fee simple in Anna Cobb in the alimony tract which was to be partitioned at a subsequent date by commissioners. The minutes containing this decree was signed by the Chancellor and clearly valid unappealed from and final.

The contention of Tom Cobb that he is the owner of the 69.4-acre homestead tract presents a more serious problem. The wife, Anna Cobb, had clearly received only a life estate in this tract; at the time of her death in 1954 all of their children had reached their majority and it is the contention of Tom Cobb that the reversionary interest subject only to the homestead rights of the wife and children at all times remained vested in him and that hence, after the wife's death and the children attained their majority, he was entitled to the immediate possession of this reversionary interest.

Tennessee Code Annotated sec. 36-824 provides as follows:

"36-824. Transfer of title to homestead when wife obtains divorce.—If the head of a family is married, and his wife obtain a divorce on account of his fault or misconduct, the title to the homestead shall be vested by the decree of the court granting the divorce, in the wife, and, after her death, it shall pass to their children. (Acts 1870, ch. 80, sec. 8; Shan. sec. 3810; Code 1932, sec. 7731)"

This Code section was in force in 1919 when the divorce was obtained by Anna Cobb from Tom Cobb. Surprisingly this Code section has been construed by our appellate courts very seldom and the constructions thereof are not without some uncertainty.

A first reading of this Code section would give the impression that the wife was to take the homestead tract of land for her lifetime and that the fee would be vested in the children of said marriage and the husband would have no further rights of any kind in the property by way of reversion or otherwise. See Caruthers' "History of a Lawsuit", Seventh Edition, sec. 640, p. 718.

However, in the case of Belcher v. Belcher, Tenn. Ch. App., February 21, 1900, reported in 57 S. W. 382, it was held that under this section of the Code the homestead should be vested in the wife for life and at her death it would pass to the children of the marriage and also to the minor children of the husband by his first marriage. That opinion does not go further and explain whether the children take during their minority or in fee simple. The implication is that they would take only

during their minority and if so then, of course, the husband would have a reversionary interest.

In the case of Oliver v. Milford, 1950, 190 Tenn. 456, 230 S. W. (2d) 963, 964, it was held that the following language operated to give the wife only a life estate in the homestead tract with a reversion in said tract remaining in the husband. The decree in that case provided as follows: "All right, title and interest of the homestead in and to the above tract of land be divested out of the defendant and be vested in the complainant."

In that case, however, the parties to the divorce action had no children but the wife had a child by a former marriage who claimed the property by inheritance from her mother.

From the opinion of Mr. Justice Burnett in Oliver v. Milford, supra, we quote as follows:

"It is argued on behalf of the appellants that if the decree herein vesting the homestead of this property in the divorced wife was made pursuant to Code, sec. 7751 that upon her death by force of Code, sec. 7731 'it shall pass to their children' includes the appellants herein who are the children by a former marriage and are not the children of the appellee, the divorced husband. We cannot agree with this contention. It seems to us that it is necessary to read along with Code, sec. 7731, Code, sec. 7728 which specifies how the homestead shall descend. Both of these Code Sections are in the same chapter in the Code under the title 'Homestead.' Code, sec. 7728 provides in substance that upon the death of the husband owning the property that the homestead

shall 'go to his widow during her natural life, with the products thereof, for her own use and benefit and that of her family who reside with her, and, upon her death, any provision by will to the contrary notwithstanding, it shall go to the minor children of the deceased husband, * * *.' Obviously by this language the Legislature did not intend that a homestead exemption to the widow should go to her children by another marriage who are not shown as dependent upon her or are not of such an age as would be entitled to this exemption as is provided by Code, sec. 8234 wherein exemptions to a widow of homestead are also for the benefit of the minor children under fifteen years of age whether they are the children of the husband or wife. The statute, Code, sec. 7731, is not a statute of *descent* and distribution, but is really an exemption statute for the benefit of the divorced wife and children when she is forced to divorce her husband for fault of his.''

We thus interpret the above language as stating in substance that under T. C. A. Code Section 36-824 (formerly 1932 Code Section 7731) the wife is awarded the homestead property for her lifetime and upon her death the homestead descends to such minor children of the husband and/or wife who may survive the wife. Such minor children are to hold the homestead until they reach their majority or die whichever occurs first after which such child or children shall have no further rights in the homestead. After the last child shall have reached his majority or died, the husband then is entitled to the possession of his reversionary interest in said homestead tract unless he shall have conveyed the same or lost the same to his judgment creditors.

In other words, we interpret Oliver v. Milford to hold that 1932 Code Section 7731 does not contemplate the awarding of a fee simple in the homestead tract to children of the husband and/or the wife.

In our opinion the Chancellor who rendered the decree in the case of Cobb v. Cobb on March 22, 1919, did not so construe Code Section 7731 but construed this section to provide that the wife would receive the homestead for life and that upon her death it would go in fee to all of the children of the marriage. We think that has been the opinion of many other members of the bar and bench through the years.

The language used by the Chancellor in the divorce decree of date March 22, 1919, is as follows: "It is further ordered, adjudged, and decreed that the title to the homestead be divested out of the defendant and vested in complainant during her life and after her death it shall pass to and be vested in Mary Spencer, Pearl, Lessie, Thomas Henry, John McKinley, Dosie, Elmer Jones, Otho, and Lady Cobb, the children of complainant by defendant. * * *."

If the Chancellor had stopped with this phraseology we think the holding in Oliver v. Milford would permit us to hold that upon the death of Anna Cobb in 1954 leaving no minor children surviving her that Tom Cobb would be entitled to the possession of the reversionary interest in said tract of land.

However, by the decree of date June 10, 1919, confirming the report of the commissioners laying off homestead and alimony the Chancellor showed clearly that he interpreted Code section 7731 as requiring a life estate to the homestead in the wife and a fee simple

to the children of the marriage by the following phraseology:

"It is therefore ordered, adjudged and decreed by the court that all the right, title, interest of defendant, Tom Cobb, in and to the 69.4 acres of land set apart to complainant as her homestead be and the same is hereby divested out of him and vested in the complainant, Anna Cobb, for and during the term of her natural life, as a homestead, and that the remainder interest in said homestead be and the same is hereby vested in Mary Spencer, Pearl, Lessie, Thomas Henry, John McKinley, Dosie, Elmer Jones, Otho and Lady Cobb, the children of complainant by defendant and their heirs and assigns forever."

The effect of this decree is to vest an undivided interest in remainder in praesenti in each of the children of said marriage in the homestead tract subject only to the life estate of their mother.

Now the question presents itself: What effect did this erroneous decree of the Chancellor have upon Tom Cobb's right of reversion in the homestead tract?

We do not think the statutes of limitations either of seven years or thirty years are applicable because the life tenant did not die until 1954. It was recently held by the Supreme Court in Edwards v. Puckett, 1954, 196 Tenn. 560, 268 S. W. (2d) 582, that the statutes of limitations for adverse possession do not run against a remainderman during the life of the life tenant and certainly the same rule would apply to a reversioner.

In our opinion the decree of June 10, 1919, though erroneous, was effective to divest Tom Cobb of all in-

terest in the homestead tract and vest the same in fee in the children of said marriage. The Chancellor had jurisdiction of the parties and of the subject matter of the cause. Tom Cobb had suffered a pro confesso to go down against him in the original divorce suit and the divorce decree of March 22, 1919, clearly showed that the cause was not terminated but that there would be an additional decree confirming or rejecting the report of commissioners laying off homestead and alimony.

Therefore, we think Tom Cobb was properly before the Court and that the Chancery Court had jurisdiction to divest all title to the homestead tract including his reversionary interest out of the same and to vest title in fee simple in the children. Edwards v. Puckett, supra.

Somewhat reluctantly we feel constrained to hold that when the decree of June 10, 1919, divesting all title out of Tom Cobb to the homestead tract became final by the expiration of the term or the expiration of thirty days thereafter, that Tom Cobb lost all right of reversion in said homestead tract. The reason we state that we reluctantly hold this is first, that the Chancellor was erroneous in his construction of 1932 Code Section 7731 as giving the children a right to a fee in said homestead and second, that none of the children have resisted Tom Cobb's suit for the recovery of the land except one child, the appellee, Lessie Cobb Brown.

Hence, all of the assignments of error are respectfully overruled and the judgment of the Court below is affirmed. The appellant, Tom Cobb, and the sureties on his appeal bond are taxed with the costs of this appeal.

Avery, P. J. (Western Section), and Bejach, J., concur.