## Middle Creek Coal Company v. Harris, et al.

(Decided June 17, 1924.)

### Appeal from Floyd Circuit Court.

1. Mines and Minerals—Coal Company Held Not Guilty of Willful Trespass in Mining Coal.—In view of fact that deed was susceptible of several constructions as to right to coal under one-acre reservation for cemetery purposes, coal company held not guilty of willful trespass in mining coal.

2. Mines and Minerals—Damages where Coal Taken in Good Faith Limited to Royalty Value as it Lay in Earth.—Measure of recovery where coal is taken from under lands of another in good faith is limited to reasonable royalty value of coal as it lay in earth.

3. Evidence—Evidence as to What Occurred and What Said at Time of Negotiation for Deed Held Inadmissible.—In action for damages for willful trespass in taking coal, evidence of parties as to what occurred and what was said at time of negotiation for deed, when land in question was reserved for cemetery purposes, and their intentions with reference thereto, was incompetent.

4. Deed—Construction of Deed for Court.—Construction of a deed is for court.

A. B. COMBS and SMITH & COMBS for appellant.

A. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

On the 9th day of February, 1905, James P. Harris and others, by deed duly executed, acknowledged and recorded, conveyed a tract of land containing 247 acres to R. E. Stanley. On the 16th day of May following, Stanley and his wife conveyed the same to the Harris-Stanley Coal and Land Company, a corporation. On the 24th of November, 1906, that corporation leased the same to David Holley as trustee, and in June following, Holley as trustee assigned the lease to the Middle Creek Coal Company.

The original deed executed by the Harris family contained the following reservation:

"It is expressly agreed and understood that one acre is reserved on the graveyard point beginning at a small black pine standing on the southwest end of the point about 35 steps from the grave of James P. Harris, Sr.; thence running an east course 70 yards around the formation of the point to a stake; thence a north course 70 yards to a stake; thence a west course 70 yards crossing said point to a stake; thence a south course 70 yards to the beginning so as to include one acre, a road is hereby reserved to the one acre of ground above excluded from the public road to the northwest corner, same is to be 10 feet wide, so far as the road is concerned only the surface is reserved."

In the deed from Stanley to the Harris-Stanley Coal and Land Company this acre of land was referred to as "the one acre tract reserved by J. P. Harris' heirs as a cemetery." The lease to Holly· and its assignment referred to the Stanley deed for a description. It also appears that R. E. Stanley after his purchase had the land surveyed and mapped by one Prindable, who is now dead, and this map has since been used by subsequent purchasers. In this survey and map there was an error in locating the acre reservation, and this error was not discovered by the lessees until this lawsuit.

After the execution of the lease, the Middle Creek Coal Company took possession and has since been engaged in mining coal upon the lands in question, and in so doing has mined between one and two thousand tons of coal from under this reservation.

This suit was filed by the Harris heirs to recover the value of such coal at the tipple, on the ground of a willful trespass. The company defended on the theory that the mineral rights were conveyed by the deed to Stanley; that under the deed from Stanley to the Stanley corporation, a distinct reservation was made of this lot as a cemetery and it was unaware of any claim being otherwise made by the Harris heirs; that it followed the Prindable survey and map and in good faith mined the coal in question, and was unaware of having crossed the line of the original reservation.

This was controverted. A jury trial was had; much evidence was introduced and elaborate instructions given

and a verdict rendered in favor of the Harris heirs against the coal company for $8,000.00, and in favor of the coal company on a cross-petition against Stanley in the sum of $180.00, this being the royalty on 2,000 tons of coal at 9 cents a ton.

On this appeal it is urged that the original reservation of the land in question was for a cemetery and thereby the mineral rights vested in the vendee. Second, incompetent evidence was introduced. Third, the instructions were erroneous.

It will readily be seen that the case largely turns upon the meaning of the language used in the first reservation. Under our decisions a fee may be thus reserved if it clearly appears to have been so intended, Singleton, &c. v. Trustees, &c., 10 Ky. L. R. 851; but, if it was meant thereby to reserve one acre for a cemetery or graveyard, the grantor would thereby part with the title, except for the use of the surface for cemetery purposes. Brown v. Anderson, 88 Ky. 577; Damron v. Justice, 162 Ky. 101; Johnson v. Elkhorn Gas Coal Mining Co., 176 Ky. 676.

> "A reservation in a deed as right of way or privilege should be construed in the same way as a grant by the owner of the soil in a similar right or privilege." 18 C. J. 350.

In other words, such reservation is the creation of a new right not in existence at the making of the grant and is equivalent to the grantor conveying all the property and the grantee reconveying the part thus reserved. Washburn on Real Property, vol. 3, page —; Devlin on Deeds, section 980; French v. Carhart, 1 N. Y. 96; 18 C. J. 347.

A purchaser of a cemetery lot does not obtain a fee simple title, but only the right to its use for interment. This is a property right but is construed in the nature of a privilege or easement, though it does not depend upon a dominant estate. 5 R. C. L. 245; 11 C. J. 60; Hurtle v. Riddle, 127 Ky. 623; Kincaid's Appeal, 66 Penn. State 411.

In Brown v. Anderson, there was both an exception and reservation, reading thus:

> "All which land is hereby conveyed to the grantees, excepting and reserving ½ acre of land of said tract, being the old family graveyard of the grantor, together with the right of way to said graveyard."

It did not appear in that case that there was any other purpose for which the lot could be used and it was held that the language of the instrument restricted its use to the interment of members of the grantor's family.

In Damron v. Justice, the language was:

"Excepting ½ acre of land at the grave, including the graveyard, with the privilege of passing to and from said graveyard, unto the second party, her heirs and assigns forever, together with all of its appurtenances thereunto belonging, except the said ½ acre at the graveyard to her heirs and assigns forever."

It will be observed that in that case as well as the Brown case there were both an exception and reservation, but the court held that it could be used only as a graveyard.

In Johnson v. Elkhorn G. C. M. Co., the original contract contained these words: "There is a reservation ¼ acre square around the graveyard on the hillside." In conformity thereto this stipulation appeared in the deed: "There is excluded from the above described tract the following described boundary around the grave."

Prior to the execution of the contracts Johnson's infant child had been buried on the excluded lot; it does not appear that the lot was otherwise so used, but the court construed the reservation to be for cemetery purposes and on the application of his remote vendees Johnson was enjoined from erecting a building and storehouse on the lot or using it otherwise than for burial purposes.

Here the language is:

"  .  .  .  One acre is reserved on the graveyard point beginning at a small black pine standing on the southwest end of the point about 35 steps from the grave of James P. Harris, Sr."

It is argued that these words are descriptive merely and that the references to "graveyard point" and "the grave of James P. Harris, Sr.," are to be construed in the same manner as would be a reference to any other natural object. While the argument is plausible it is hard to distinguish these words from the language used in the Johnson case, *supra,* but some significance must be at-

tached to the phrase, "so far as the right of way is concerned the surface only is reserved."

This phrase is only declaratory of the grantee's rights under the deed, but by its use the parties gave an expression of their intention, to-wit, that the grantee was given the fee, subject to the use of the roadway; and that expression as to the roadway, may indicate that it was not intended for the grantees to have the fee in the excluded lot. True, the grantors were conveying 247 acres of land at the price of $25.00 per acre, and it is somewhat singular that they would wish to retain this lot of one acre under such circumstances. On the other hand, it appears that there were only about one-half dozen graves on the lot and no special reason was shown for reserving so large a lot for cemetery purposes. It also appears that the lot was underlaid with a fine vein of coal; that on the back side and opposite to the point at which the graves were located there was a drift entry from which the grantor's family procured coal for domestic and other purposes; that the roadway reserved ran from the public highway to the entry mentioned and did not run near the point at which the graves were located; further, that at no time has the coal company claimed the right to mine coal under this lot, but, on the contrary, has at all times respected the lines as erroneously located in the Prindable survey and asserted its intention in not passing those lines. Construing the deed with reference to all its parts and considering it in the light of these circumstances we are inclined to hold that the reservation excluded the lot from the conveyance; however, in view of the doubtful language of the deed and of the fact that it is susceptible of the construction placed upon it by the coal company and of the confusion existing as to the location of the lines, we do not think the company was guilty of a wilful trespass in mining the coal in question.

It follows that the recovery should have been limited to the reasonable royalty value of the coal as it lay in the earth.   New Domain Oil Co. v. McKinney, 188 Ky. 183; Burke Hollow Coal Co. v. Lawson, 151 Ky. 305; Bennett Jellico Coal Co. v. East Jellico Coal Co., 152 Ky. 838.

The evidence of the parties as to what occurred and what was said at the time of the negotiation for the purchase, and their intentions in reference thereto was incompetent and should not have been admitted. Also the construction of the deed was for the court.

In another trial, under the same evidence, the court will instruct the jury to find for the plaintiff, and fix the measure of damages above indicated. In reference thereto the first call of the deed should run around the formation of the point seventy yards east of the beginning corner as expressed in the deed and not a straight line to the point seventy yards east of the beginning.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.