**ALEXANDER, Collector of Internal Revenue, v. REA et al.**

No. 1891.

Circuit Court of Appeals, Tenth Circuit.

March 18, 1940.

Thomas G. Carney, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., on the brief), for appellant.

James A. Cosgrove, of Washington, D. C., for appellees.

· Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Rea & Read Mill and Elevator Company [1] was a corporation organized under the laws of Oklahoma. On or about July 1, 1930, it was dissolved, and Will G. Rea and Frank Foresman, its only living directors, became trustees for the creditors and stockholders under § 9788, O.S.1931, 18 Okl.St.Ann. § 163.

On April 1, 1918, the Elevator Company sold a tract of land, on which its milling plant was located, to the Tulsa and Santa Fe Railway Company [2] for a consideration of $65,000. The sale did not include the plant. On April 5, 1918, the Railway Company and the Elevator Company entered into a written lease whereby the former leased to the latter the ground purchased for a term of two years at a rental of $250.00 per month. The lease gave the Elevator Company the privilege of renewal at the end of the two-year term for one year or longer, provided the Railway Company should not then need the land for railroad purposes. It recognized the right of the Elevator Company to remove the buildings from the leased premises and provided that the Elevator Company might terminate the lease on thirty days' written notice to the Railway Company, and that upon such termination and removal of the buildings by the Elevator Company, further liability for rent should cease.

On April 30, 1919, the Elevator Company filed its income and profits tax return for the year 1918, disclosing a net income of $16,137.73 and a tax liability of $3,228.59, which it paid.

On October 18, 1923, a revenue agent made a report on the Elevator Company's income for the year 1918. He included in such income the $65,000 received from the sale of the land to the Railway Company and found the March 1, 1913 fair market value of such land to be $26,000, and the profit derived from the sale to be $39,000. He determined the net income of the Elevator Company to be $56,914.95 and proposed an additional tax of $33,837.33. On November 6, 1923, a copy of the report was furnished to the Elevator Company. On February 2, 1924, the Commissioner advised the Elevator Company that the ad-

---

[1] Hereinafter referred to as the Elevator Company.

[2] Hereinafter referred to as the Railway Company.

ditional tax liability of $33,837.33, proposed by the revenue agent, had been approved. Thereafter, the Elevator Company, from time to time, lodged protests and claims with the Commissioner in which it asserted that the March 1, 1913 valuation of the land should be fixed at $50,000, and since it was required to dismantle and remove the milling plant at the end of the term of the lease, that it should be allowed a deduction equal to the January 1, 1918 value of the buildings and equipment on the leased premises, less their salvage value allocated to the years 1918 and 1919. It submitted with one protest an appraisal of the land and the plant made by the Southwestern Appraisal Company in 1919, wherein the Appraisal Company fixed the March 1, 1913 valuation of the land at $50,000 and of the buildings at $57,157.33.

The Commissioner refused to accept the report of the Appraisal Company on the ground that it contained no inventory on the date made, failed to show the manner of eliminating subsequent additions, gave no dates of acquisition or other information necessary to establish values, and did not conform with TD 3367.

On April 2, 1924, the Elevator Company asserted that computation of the taxes under §§ 301 and 302 [3] would result in an abnormal profit being taxed at a rate in excess of 60 per cent.

On November 22, 1924, the Commissioner advised the Elevator Company that its application under § 327 for assessment of its profits tax for the year 1918 under the provisions of § 328 had been allowed and that an audit of its tax liability for the year 1918 disclosed a deficiency of $26,941.45. The tax was determined upon a net income of $56,914.95.

On January 5, 1925, the Commissioner addressed a letter to the Elevator Company proposing a deficiency of $26,941.45 and advising that the Elevator Company had 60 days within which to appeal to the United States Board of Tax Appeals. A petition for review by the Board of Tax Appeals was thereafter timely filed by the Elevator Company.

Before the petition for review came on for hearing before the Board of Tax Appeals, the Acting Commissioner of Internal Revenue on August 12, 1925, addressed a letter to the Elevator Company advising that in view of representations made by the internal revenue agent in charge at Oklahoma City, the profit realized on the sale of the land had been reduced in the amount of $24,000, and that after giving effect to the reduction, the additional tax amounted to $14,061.31. Attached to the letter was a statement showing the adjusted net income to be $32,914.95, after deducting $24,000 from the amount previously determined. The letter further advised that if the Elevator Company would withdraw its appeal to the Board of Tax Appeals, the deficiency would be computed in accordance with the attached statement. On September 12, 1925, the Elevator Company withdrew its appeal.

In a letter to the Commissioner dated September 24, 1925, W. B. Paul, Esq., attorney for the Elevator Company, acknowledged receipt of the Acting Commissioner's letter, stated that the appeal had been withdrawn, pointed out that the statement attached to the Acting Commissioner's letter showed a computation of tax under § 301 instead of § 328, stated that the change in income did not eliminate the abnormal profit, but merely reduced the amount thereof, and that almost 50 per cent of the taxable income resulted from the sale of land held prior to March 1, 1913, made, not because of a favorable market due to war conditions, but under threat of condemnation proceedings by the Railway Company, and requested that the case be returned to the Special Assessment Section.

On October 9, 1925, the Commissioner acknowledged receipt of Mr. Paul's letter and advised that pursuant to the request therein contained, the case was being considered under the provisions of §§ 327 and 328.

On December 7, 1925, the Commissioner addressed a letter to the Elevator Company advising it that a reaudit of its income and profits tax return for the year 1918 had resulted in a deficiency in tax of $10,466.34 as shown by a statement [4] attached to the

---

[3] Unless otherwise indicated, the section references herein are to the Revenue Act of 1918, 40 Stat. 1057.

[4] The statement in part read:
"You are advised that after careful reconsideration and review, your application under the provisions of Section 327 for assessment of your profits tax as prescribed by Section 328 of the Revenue Act of 1918 has been allowed. Your profits tax is based upon a comparison with a group of representative concerns which in the aggregate may be said to be engaged in a like or similar trade or business to that of your company.

"The computation of your tax liability

letter, and that if it acquiesced in such determination, it was requested to sign the enclosed agreement consenting to the assessment of such deficiency.

On December 29, 1925, the Elevator Company forwarded to the Commissioner an agreement waiving the right of appeal under § 274(a) of the Revenue Act of 1924, 26 U.S.C.A. Int. Rev. Act, and consenting to the immediate assessment of a deficiency in the amount of $10,466.34. It attached thereto the following statement:

"The undersigned taxpayer does not waive the right to file a claim for refund in the amount of $10,466.34, or any other amount properly subject to refund."

Thereupon, a deficiency of $10,466.34 was assessed. The deficiency assessment was paid by the Elevator Company as follows: On April 26, 1926, $9,009.15, and on July 8, 1926, $1,457.19 tax, and $43.71 interest.

On February 26, 1928, the Elevator Company filed a claim for the refund of $10,466.34. The claim was based on the contention that its milling plant had a life of 24 months from April 1, 1918, the term of the lease from the Railway Company, and that it was entitled to a depreciation of the value of the plant, less its salvage value [5] allocated to the years 1918 and 1919. The claim for refund was rejected by the Commissioner on November 16, 1928.

On April 16, 1930, the Elevator Company filed another claim for refund, purporting to amend its previous claim, in which it asserted that it was entitled to offset from the amount received for the land, in addition to its March 1, 1913 value, the March 1, 1913 value of the milling plant, less its salvage value. This claim was rejected on September 19, 1930.

On April 17, 1931, the trustees brought this action against Alexander, Collector, to recover the sum of $10,466.34, with interest on $9,009.15 from April 26, 1926, and on $1,457.19 from July 8, 1926.

In his answer, Alexander alleged that the taxes sought to be recovered had been computed by the Commissioner under the

provisions of §§ 327 and 328 on an application of the Elevator Company for such a computation, and that the Elevator Company had thereby waived its right to a judicial review of the Commissioner's determination. From a judgment for the amount prayed for, with interest, Alexander has appealed.

■ Where a taxpayer, pursuant to the provisions of § 327, applies for a computation of its tax, pursuant to the provisions of § 328, and the Commissioner grants the application and makes the assessment under those sections, the taxpayer is not entitled to a judicial review of the discretionary action of the Commissioner, either with respect to the rate fixed or the factors that enter into the computation of the income. Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921.

■ Where a taxpayer makes application to the Commissioner under § 327 to have its profits tax computed under § 328 and the Commissioner grants the application and computes the profits tax under § 328, the courts are without jurisdiction to entertain an action for a refund of either income or profits taxes on the ground that the net income was erroneously determined by the Commissioner. Welch v. Obispo Oil Co., 301 U.S. 190, 57 S.Ct. 684, 81 L.Ed. 1033; Paul and Mertens, Vol. 5, § 42.165.

■ On April 2, 1924, the Elevator Company made an application to the Commissioner under § 327 for a computation of its profits tax under § 328. The application was granted and the tax computed under § 328. While an appeal was pending before the Board of Tax Appeals from the action of the Commissioner, the Commissioner acceded to the claim of the Elevator Company that the March 1, 1913 value of the land should be fixed at $50,000. The Elevator Company then withdrew its appeal and the Commissioner recomputed the tax under § 301. On September 24, 1925, the Elevator Company again made application under § 327 for a computation of its tax under § 328. The application was granted and the tax recomputed under §

---

under the above provision is as follows:

| | | |
|---|---|---|
| Net income as adjusted | | $32,914.95 |
| Profits tax under Section 328 | | 11,346.74 |

Income Tax

| | | |
|---|---|---|
| Net Income | | $32,914.95 |
| Less: | | |
| Profits Tax | $11,346.74 | |
| Exemption | 2,000.00 | 13,346.74 |

| | | |
|---|---|---|
| Balance taxable at 12% | | $19,568.21 |

| | |
|---|---|
| Tax at 12% | $ 2,348.19 |
| Corrected tax liability | $13,694.93 |
| Original tax assessed | 3,228.59 |
| Additional tax due | $10,466.34" |

[5] It asserted the salvage value was $6,000.

328. The Elevator Company then filed a written consent to an immediate assessment, waived its right to appeal to the Board of Tax Appeals, and reserved only its right to file a claim for refund. While the Commissioner might have granted relief on the claim for refund, upon his denial thereof the Elevator Company was not entitled to a judicial review of the Commissioner's action.

Whether the Elevator Company, before final action by the Commissioner, could have withdrawn its application for computation of its tax under § 328 and requested that it be computed under § 301, we need not determine. It at no time asked leave to withdraw its application. On the contrary, it sought and obtained relief under §§ 327 and 328 and it may not now, having had the benefit of those sections, ask the court to redetermine its income and if the redetermination is to its advantage, to disregard the computation under § 328 and award a claim for refund on the basis of a computation under § 301. See Freeport Texas Co. v. United States, Ct. Cl., 58 F.2d 473, 480, certiorari denied 287 U.S. 660, 53 S.Ct. 122, 77 L.Ed. 569.

We conclude that the court was without jurisdiction to entertain the action. The judgment is, therefore, reversed and the cause remanded with instructions to dismiss the petition.