**DELTA DRILLING CO. et al. v. ARNETT.**

**BRACKETT et al. v. ARNETT.**

**ARNETT v. DELTA DRILLING CO. et al.**

Nos. 11097, 11098, 11099.

United States Court of Appeals
Sixth Circuit.

Dec. 27, 1950.

Writ of Certiorari Denied March 26, 1951.

See 71 S.Ct. 574.

482

Charles G. Middleton, Louisville, Ky., for appellant Delta Drilling Co.

William L. Sullivan, Henderson, Ky., for appellant W. W. Brackett et al.

Charles G. Middleton, Leo T. Wolford, and Eugene B. Cochran, Louisville, Ky., King, Flournoy & Craig, and N. Powell Taylor, and Pentecost & Dorsey, all of Henderson, Ky., Ralph W. Garrett, Rob-

ert L. Imler, Tulsa, Okl., Clarence Lohman, Edward Kliewer, Jr., Houston, Tex. on the briefs, for appellants and cross-appellees.

Thomas E. Sandidge and W. P. Sandidge, Owensboro, Ky., Edwin M. Slote, New York City, for Thomas E. Arnett, appellee and cross-appellant.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

These appeals and cross-appeal involve title to the oil and gas underlying a tract of about 47 acres of land, situated in Henderson County, Kentucky.[1] In 1915 Rubie Powell and her husband, owners of the land in question, conveyed it by general warranty deed, in fee simple, to plaintiff Thomas E. Arnett. This deed is the common source of title for all the parties. On January 8, 1915, plaintiff mortgaged the land, reserving to himself "the coal and mining rights under this land." The mortgage was foreclosed in 1916, and defendants W. W. Brackett and his wife became surface owners by mesne conveyances from T. J. Arnett, the purchaser at the foreclosure sale. They and the heirs of T. J. Arnett executed oil and gas leases to the defendant Sinclair Prairie Oil Company, reserving a one-eighth royalty. In 1947 Sinclair assigned fractional working interests to defendants Delta Drilling Company and W. F. Lacy. In turn, Lacy assigned fractional working interests to defendants A. W. Wesselman and A. V. Martens. The working interests in the oil and gas were distributed as follows:

| To Sinclair Prairie Oil Company, | 32/128 |
| Delta Drilling Company, | 40/128 |
| W. F. Lacy, | 30/128 |
| A. W. Wesselman, | 5/128 |
| A. V. Martens, | 5/128 |

Other defendants named in the complaint are owners of royalty interests. In 1947, five producing oil wells were drilled upon the tract, and plaintiff subsequently instituted this action to quiet title, and for injunction and accounting. After full hearing, the District Court entered a judgment in his favor.

Three principal questions are presented:

(1) Did Thomas E. Arnett, in the mortgage which he executed in 1915 to T. J. Arnett, reserve to himself the oil and gas?

(2) Did the defendants, through the foreclosure proceedings and subsequent conveyances, acquire title to the oil and gas underlying the mortgaged property?

(3) Is J. W. Ellis, who in December, 1948, subsequent to a judgment by the court in favor of the plaintiff, acquired a fractional royalty interest in the share of J. R. Stebbins in the oil and gas leases, an indispensable party whose presence would destroy jurisdiction?

A preliminary question is raised by plaintiff's motion to dismiss the appeals so far as they concern the judgment quieting his title. This is based upon the contention that a judgment of November 22, 1948, was a final and complete disposition of the question of plaintiff's title. In this judgment the District Court held that plaintiff was the owner of the legal title to the minerals and entitled to possession and quiet enjoyment thereof; that the oil and gas leases involved were invalid and cancelled and set aside; and that the defendants should render an accounting of all oil and gas extracted, produced, or sold by them from the wells which they had drilled upon the land. No appeal was taken from this judgment. A later judgment, entered September 22, 1949, reiterated the holding that plaintiff was owner of the legal title, cancelled the oil and gas leases, gave plaintiff title to the equipment, and rendered judgment against defendants on the accounting feature of the case. The appeals herein were taken on October 17, 1949, from this second judgment, and plaintiff contends that this court has no jurisdiction to consider the appeals so far as the judgment holding plaintiff to be the owner of the oil wells and the oil and gas, and quieting his title to the same, is concerned, for this was adjudicated in the first judgment, from which no appeal was taken.

The judgment of November 22, 1948, was denominated "Interlocutory Order and Judgment," but its finality is to be

---

1. The parties will be denominated as in the court below.

determined not by its name, but by the question whether it disposes of the case upon its merits. Jacobsen v. Jacobsen, 75 U.S.App. D.C. 223, 126 F.2d 13; Biggins v. Oltmer Iron Works, 7 Cir., 154 F.2d 214. Cf. City of Louisa v. Levi, 6 Cir., 140 F.2d 512. Defendants contend that the District Court and the parties considered the first judgment as purely interlocutory and non-appealable; but this circumstance plainly is not controlling. Raytheon Mfg. Co. v. Radio Corp. of America, 1 Cir., 76 F.2d 943, affirmed 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327.

■ We think the judgment of November 22, 1948, is clearly final. It is true that the judgment grants four defendants leave to file answers, but these were to relate to the question whether the defendants had acted innocently in drilling for the oil. The question of title to the equipment was left open; but this also is incidental to the accounting.

With reference to the main question of title to the minerals, the judgment of November 22, 1948, declared that the plaintiff "is now and has been since January 7, 1915, the owner and is entitled to possession of the oil and gas" in and under the land described, and ordered that his title to such minerals "be and the same is hereby quieted against all claims, demands, and pretensions of the defendants, and each of them with respect thereto." It was also adjudged that the plaintiff "is entitled to all of the oil or gas wells now located on the above described tract of land," and that the defendants "make and render to the plaintiff a full and complete accounting within 20 days of the date hereof of all oil, gas and other petroleum products" extracted from such land by them, and sold, "so that the court can determine therefrom the issues as to the amount of damages, if any, that should be awarded to the plaintiff herein." The judgment further ordered that the case be "continued on the undisposed of issues herein." This was a judgment which was "complete and required nothing from the later one to give it finality." Kycoga Land Co. v. Kentucky River Coal Corp., 6 Cir., 110 F.2d 894. Failure to appeal therefrom was therefore fatal, Gulf Refining Co. v. United States, 269 U.S. 125, 46 S.Ct. 52, 70 L.Ed. 195, to the case of the defendants of record on November 22, 1948, so far as it related to the issue of quieting title.

■ This conclusion disposes of this feature of the case as to the principal defendants. In the posture which this case assumed toward its close, the conclusion does not, however, allow us to omit decision as to whether the court rightly decided the question of title. Following the judgment of November 22, 1948, certain motions to dismiss for lack of indispensable parties were filed. On the hearing of these motions, plaintiff filed an amended complaint, making T. M. Pryor, J. W. Liles, and J. Ray Stebbins parties defendant. Answers were subsequently filed by Liles and Pryor, raising the same issues of fact and questions of law which had been raised by the principal defendants. Stebbins made an itemized response to plaintiff's request for admissions. Since none of these defendants had an opportunity to be heard upon the questions involved in the case prior to the adjudication of November 22, 1948, that judgment is not final as to them, and we are compelled to consider whether, as contended, the judgment should be reversed.

The mortgage reservation does not in terms mention oil and gas.[2] It neither

---

2. The mortgage reservation reads as follows:

"It being understood and agreed that the coal and mining rights under this land is not mortgaged or affected hereby but are reserved together with the free and uninterrupted right of way, underneath the surface, into said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, draining, ventilating, coking and carrying away said coal, hereby waiving all surface damages arising from the removal of said coal, and together with the privilege of carrying through said described premises, underneath the surface, supplies, tools or other coal or minerals, underlying adjacent properties now belonging to or which may hereafter be acquired by Mortgagor his heirs or assigns."

conveys these minerals to the mortgagee nor reserves them expressly *in haec verba* to the mortgagor. If the reservation covers oil and gas it is due to the addition of the phrase "mining rights" after the term "coal." As pointed out by the defendants, the privilege of access, of digging, etc., which follows in the reservation, clearly relates only to coal, and the term "or minerals" which are authorized to be carried through the premises refers to minerals underlying adjacent properties.

■ However, it is now clearly settled in Kentucky that the term "mining rights" means minerals, and includes oil and gas. Rowe v. Chesapeake Mineral Co., 6 Cir., 156 F.2d 752; Maynard v. McHenry, 271 Ky. 642, 113 S.W.2d 13; Kentucky-West Virginia Gas Co. v. Preece, 260 Ky. 601, 86 S.W.2d 163; Federal Gas, Oil & Coal Co. v. Moore, 290 Ky. 284, 161 S.W.2d 46; Hurley v. West Kentucky Coal Co., 294 Ky. 96, 171 S.W.2d 15; Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148; Slone v. Kentucky-West Virginia Gas Co., 289 Ky. 623, 159 S.W.2d 993. Hence the mortgagor reserved title to the oil and gas.

About a year after the mortgage was executed, foreclosure proceedings were instituted, and, as significantly commented by the District Court, if the intention of the mortgagor was not plain in the reservation, the time to clarify this point was in the foreclosure proceedings. The judgment of the Henderson County Court foreclosing the mortgage contained this provision: "The coal and other mining rights in and under said 47 acres have heretofore been conveyed and are not to be sold under this decree."

The sale was consummated and the purchaser was T. J. Arnett, the mortgagee and predecessor in title to the various defendants. The commissioner's deed, drawn in conformity with the direction of the judgment, stated: "The coal and other mining rights in and under said 47 acres have heretofore been conveyed." Some seven weeks after receiving the commissioner's deed, the purchaser, T. J. Arnett, sold the property to Walter H. Lockett and his wife, the deed stating that "The coal and mineral rights underlying this property is not herein conveyed." In 1933 the Lockett tract was sold to the defendants W. W. Brackett and his wife. This deed declared: "Less however the coal and mineral rights underlying this property is not herein conveyed, having been retained in a former deed from T. J. Arnett and wife, Virginia Arnett to the first party."

■ The judgment of the Henderson County Court was incorrect in stating that "the coal and other mining rights * * * have heretofore been conveyed." The rights in question had been reserved in the mortgage, but not conveyed. However, no attempt was made by either party to the foreclosure to correct the statement. The judgment contained a specific direction that the coal and other mining rights in and under the 47 acres were "not to be sold," and this, we think, is the decisive feature with reference to the foreclosure proceedings. The commissioner's deed was approved by the court, the approval being endorsed on it, and recorded in accordance with Kentucky law. Section 395, Kentucky Civil Code of Practice. No greater title could be passed to T. J. Arnett by the commissioner's deed than the judgment of the State court directed the commissioner to sell. Defendants urge that the foreclosure proceedings are of no importance, for the court simply foreclosed the mortgage already given, and the single question, therefore, is the construction of the reservation in the mortgage. But this contention does not accord with Kentucky law. In Trimble v. Gordon, 270 Ky. 476, 109 S.W.2d 1217, 1219, the Court of Appeals, the whole court sitting, held that the rights of purchasers of land sold under a court order, under § 396 and § 397 of the Civil Code of Practice, are governed by the descriptions in the deed, regardless of the condition of title prior to the deeds. The court said: "Those deeds —executed in conformity with the judgment of sale rendered by the court—started the title to the respective purchasers afresh and created a new beginning of titles and rights of possession whereby each purchaser became the owner of the quantity of land described in his or her deed, regard-

less of who owned the lands prior thereto." This holding is squarely applicable in the instant case, where the purchaser, who had also been the mortgagee, in his own deed to the Locketts, acquiesced in the construction of the reservation made by the court, that "The coal and mineral rights underlying this property is not herein conveyed." It follows that the judgment of the District Court that title should be quieted in the plaintiff is correct under the undisputed facts and the law of Kentucky.

■ Defendants further urge that the District Court erred in awarding plaintiff more than the customary royalty on the oil removed, citing various Kentucky cases which cover the extraction of coal by innocent trespassers. Cf. Sandy River Cannel Coal Co. v. White House Cannel Coal Co., 125 Ky. 278, 285, 101 S.W. 319, 102 S.W. 320; Kycoga Land Co. v. Kentucky River Coal Corp., supra, 110 F.2d 898. This question was not raised before the District Court, and is presented here for the first time. Hence no reviewable question arises. Bowles v. Wingfield, 6 Cir., 147 F.2d 682; Massachusetts Bonding & Ins. Co. v. Preferred Automobile Ins. Co., 6 Cir., 110 F.2d 764.

The contention that the court erred in adjudging to the plaintiff the ownership of the removable equipment is equally untenable. The cost of all such equipment was included in the $95,287.09 awarded the defendants as the reasonable cost of extraction.

The cross-appeal attacks that portion of the judgment which held that the defendants were innocent trespassers. Plaintiff was awarded the value of the oil wrongfully extracted and sold, minus a deduction for expenditures for drilling, equipping, and operating the wells, the net amount awarded being $306,568.55. Plaintiff contends that the defendants were willful and reckless trespassers, and hence not entitled to deduct expenses of extracting the oil; or, in the alternative, that if any expenses are deductible, the amount allowed was excessive.

■ Under Kentucky law, if a trespass is willful or reckless, the proper measure of damages is the aggregate of the gross receipts with interest from the dates of collection, with no deduction for cost of producing the minerals taken. If the trespass is innocent, the measure of damages is the amount of gross receipts less the cost of production. Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S.W.2d 1037; United States v. Wyoming, 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590.

■ The District Court held that the defendants were innocent trespassers, partly upon the ground that they relied upon the advice of reputable counsel to the effect that the title was clear in them. The language of the reservation might lead an intelligent purchaser to believe that coal only was reserved. A long and difficult lawsuit was necessary to clarify the points at issue. The Kentucky courts have held that such circumstances indicate that the trespass was not willful. Middle Creek Coal Co. v. Harris, 205 Ky. 119, 123, 265 S.W. 465; Blackberry, Ky. & W. Va. Coal & Coke Co. v. Kentland Coal & Coke Co., 225 Ky. 346, 350, 8 S.W.2d 425. Since the defendants drilled the wells after the facts had been fairly submitted to their attorneys, the court considered that substantial evidence of good faith was presented. The reasonable item of plaintiff's expenditures amounting to over $95,000, pending determination of the litigation, also indicates "a definite assurance of the integrity" of the defendants' claims. Swiss Oil Corp. v. Hupp, supra.

■ Plaintiff further contends that the defendants are not entitled to recover expenditures incurred after receiving actual notice of the plaintiff's claim. No Kentucky decision is cited in support of this contention. We think the District Court did not err in its ruling upon this point. The notice received by the defendants about July 28, 1947, was a mere notice of controversy, not amounting to notice of actual facts establishing the existence of willful trespass, as was the case in Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856. Moreover, the development by the defendants preserved the plaintiff's property. If the wells had not been drilled

when they were, it is undisputed that a very large proportion of the oil in the Arnett tract would have been drawn off into the adjacent Brackett or Carter tracts, where wells had been, or at the time were being drilled. The judgment of the District Court on this question is not clearly erroneous. The cross-appeal is dismissed.

Lastly, we consider whether the fact that a fractional interest in the oil and gas lease owned by A. C. Arnett, and by him partially assigned to Stebbins, was transferred on December 10, 1948, to J. W. Ellis, a resident of Florida, deprives the court of jurisdiction within the holding of this court in Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 165 F.2d 1011. Since the plaintiff is a resident of Florida, if Ellis, also a resident of Florida, is an indispensable party, the case must be dismissed.

Ellis bought one-fourth of the Stebbins interest in the lease to A. C. Arnett, under strange circumstances. He was informed by his brother-in-law, who is an attorney in Shreveport, Louisiana, and the main representative there of defendant Delta Drilling Company, that there was an opportunity to purchase an oil interest which might be a good investment. Smith, the brother-in-law, loaned Ellis $2,000, and Ellis paid Stebbins $1,250 cash for an interest as to which $1,250 was already impounded in the court. He admitted never having seen or heard of Stebbins before, and the interest was bought, as Ellis said, without his knowing how many wells were on the land and how much production was being made. He waived any guaranty of title from Stebbins. Three days subsequently Stebbins was made a party to the suit, and plaintiff urges that Ellis therefore is bound by the doctrine of lis pendens.

The District Court did not find that the transaction was void for fraud, but held that Ellis was not an indispensable party, and that jurisdiction was not defeated.

As to the main issues of the case Ellis was plainly not an indispensable party. This was true as to the issue of quieting the title. United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267. He could not have been charged with trespass in extracting oil and gas because all the circumstances of the trespass were prior to December 10, 1948, when Stebbins transferred the interest to Ellis. But he stands in a different position with reference to the cancellation of the oil lease under which he claims. This was an indivisible contract which could not be held valid in part and invalid in part. Kentucky Natural Gas Corp. v. Duggins, supra. The lease from which Ellis derives his title is that executed by A. C. Arnett as the heir of T. J. Arnett, February 22, 1943; and, assuming that Ellis is not bound by the judgment, this could not be cancelled without the presence of Ellis as a party to the suit. This, however, is an incidental and minor feature of the case.

However, if the circumstances of the transfer from Stebbins to Ellis make the doctrine of *lis pendens* applicable, Ellis is bound by the outcome of the litigation, and the court does not lose jurisdiction of the subject matter of the action. Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co., 174 U.S. 552, 566, 19 S.Ct. 817, 43 L.Ed. 1081. Defendants urge that since Stebbins acquired his interest in 1943, long before the complaint herein was filed, and became a party to the suit three days after he had transferred a fraction of his interest to Ellis, under the decision in Bowen v. Jameson, 223 Ky. 493, 4 S.W.2d 401, his interest was transferred free from the litigation. We think this contention has no merit because of the particular circumstances of the transfer.

Section 382.270, KRS, of the Kentucky Recording Act, provides that "No deed * * * conveying a legal or equitable title to real or personal property shall be valid * * * against creditors, until such deed * * * is acknowledged * * * and lodged for record." Plaintiff, under the interlocutory judgment entered November 22, 1948, was a creditor of Stebbins for a percentage of the oil and gas extracted from his property, and was protected by the Act. The amended complaint joining Stebbins as a party defendant was filed at 10:00 A.M. December 13, 1948. The mineral deed transferring the interest from Stebbins to

Ellis was not lodged for record until 3:45 P.M. December 13, 1948, and it follows that Ellis was a *lis pendens* purchaser, for he purchased from a party to the action. Also, since Stebbins was divested of title by the judgment, Ellis acquired no title, he therefore is not a necessary party, Roberts v. Cardwell, 154 Ky. 483, 487, 157 S.W. 711, and his interests are absolutely concluded by the final determination of the suit. The court's jurisdiction of the subject matter therefore was not affected by this transaction.

The judgment of the District Court is affirmed.