EDWARDS *v.* PUCKETT *et al.*

(*Jackson,* April Term, 1954.)

Opinion filed May 21, 1954.

562

Avery & Avery, of Alamo, for appellant.

S. Homer Tatum, of Alamo, Clarke, Norris & Matherne, of Brownsville, for appellees.

R. F. Jerman, of Alamo, guardian ad litem for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant, W. J. Edwards, filed his original bill in the Chancery Court of Crockett County for a declaratory judgment decreeing that he is vested with the remainder interest in 9/16 undivided interest in a 50 acre tract of land, subject to the life estate of his mother, Mrs. Louise Alice Puckett, who is still living.

The interest to which the complainant claims title is based upon the following undisputed facts. The father and mother of the complainant were the owners in 1896 of a certain tract of land in Crockett County containing 50 acres; the father owned a ⅛ interest in the land by inheritance, while the father and mother owned a ⅞ undivided interest as tenants by the entireties by purchase. On September 4, 1896, the father and mother conveyed the property in trust to secure the payment of a note of $201.50, due November 15, 1897, to R. W. Fleming, the Trustee in the deed being J. B. Fleming. On January 26, 1897, the mother of complainant, Louise Alice Edwards, who is now Mrs. Louise Alice Puckett (and a defendant to the original bill in this cause) sued the complainant's father for a divorce. As a result of this divorce suit the Chancellor granted an absolute divorce to the then Louise Alice Edwards and awarded her the custody of the complainant, W. J. (Willie) Edwards, who was then about two years old and the only child of the parties; she was given all of the personal property of the parties, and, with regard to the 50 acre tract of land, the decree provided as follows:

"It further appearing by agreement of counsel that the defendant is the owner of a certain tract of land worth about $500.00, the same being attached in this cause, (here follows a description of the land)

\*　\*　\*　\*　\*　\*

"And it appearing that complainant is entitled to alimony, it is ordered, adjudged, and decreed by the court that all the right, title and interest that Edgar B. Edwards, the defendant, has in and to said tract of land be divested out of the said Edgar B. Edwards and the same is vested in the complainant, Lou Alice Edwards *for and during her natural life time and after her death, to the child.*" (Emphasis ours.)

The original bill charges that by the foregoing decree the complainant's mother became the owner of 7/16 undivided interest in the 50 acre tract of land and the father became the owner of 9/16 undivided interest therein, and that the decree divested this 9/16 interest out of the father and vested it in the mother for life and vested the remainder interest in fee simple in complainant.

On October 19, 1898, the mother of the complainant permitted the said Deed of Trust, executed prior to the divorce decree, to be foreclosed and she and her new husband, J. F. Puckett, bought the land for the amount of the debt. The bill charged that they thereby attempted to destroy the remainder interest of complainant in the 9/16 undivided interest in the land. Following the conveyance of the Trustee to complainant's mother and her husband, they sold and purported to convey the entire 50 acres in fee simple to one J. G. Blackburn for $485.50. By subsequent conveyances the land is now claimed by defendant Paul Lewis, subject to the life estate of his mother, Mrs. H. P. Lewis.

The contention of the complainant is that he is the owner of 9/16 undivided interest in said lands as a vested remainderman, subject to the life estate of his mother, *who is still living.*

To this original bill all parties who had previously

claimed title to the land were made party defendants, including the mother of complainant and his step-father, J. F. Puckett. Neither, however, testified and J. F. Puckett has died since the bill was filed.

The answers interpose the following defenses: (1) that the Trustee and beneficiaries in the Deed of Trust of September 4, 1896, were not made parties to the divorce action filed on January 26, 1897, and hence the decree with reference to the land was of no effect; (2) that the sale price of the land of $255 was adequate; (3) that defendants are innocent purchasers; (4) that complainant was guilty of such negligence and laches as to bar his suit; (5) that the suit is barred by the statute of limitations; (6) that the Chancery Court in the divorce suit lacked jurisdiction to divest title out of the defendant and vest it in complainant, an infant of tender years.

The Chancellor dismissed the bill upon the theory that the Trustee was a necessary party in the divorce action, and that title to the land could not be affected by the Chancellor's decree since he was not made a party to the suit. The learned Chancellor seemed to be of opinion that the bill was without merit because (1) of complainant's negligence and laches, and (2) that the action was barred by the statute of limitations. The decree of the Chancellor was reversed by the Court of Appeals. We granted certiorari, and directed counsel to discuss whether or not the statute of limitations was available as a defense to the present action. While this question was thought to be determinative of the case, it was not of course the sole question for our consideration. Oral argument was heard at Jackson. We have given full consideration to the elaborate briefs filed in the Court of Appeals, and also in this Court, covering every material issue.

The action of the Court of Appeals in sustaining the complainant's several assignments of error is challenged in the petition for certiorari. The petitioners contend it was error (1) to hold that the decree of divorce divested any title to the land out of complainant's mother and step-father, because the legal title was in the Trustee, who was not before the court; and (2) that it was error to hold that complainant should not be repelled from court because of laches, and also that the statute of limitations did not run against the complainant during the lifetime of his mother.

The complainant did not file the present bill until more than twenty-five (25) years after he became twenty-one (21) years of age. In justification of this action he contends that no right of action accrued during his mother's lifetime, and *that she is still alive.*

■■ We think the Court of Appeals correctly held that the Chancellor's decree in the divorce case vested the wife, mother of the complainant, with a life estate in $\frac{9}{16}$ of the land with remainder in fee "to the child". The presumption is that it would be used for her own support and also for her infant son. *Carey* v. *Carey,* 163 Tenn. 486, 43 S. W. (2d) 498. It is immaterial to the present controversy that the decree failed to recite that it was for the child's support. Moreover the contention that the said decree was ineffectual as vesting title in them (mother and son) and divesting it out of Edwards, because the Trustee in the Deed of Trust was not made a party defendant, is not well taken. While the Trustee was no doubt a proper party he was not a necessary party. As conclusive supporting authority for this holding the Court of Appeals cited Section 94 of Gibson's Suits in Chancery, reading as follows:

"But there is a class of persons who have an interest in the property before the Court, and yet who are neither necessary nor proper parties to the suit. This class includes persons who have an interest in the subject matter of the suit, but whose title is paramount to that of the complainant, and against whom, or whose title the complainant is entitled to no relief and seeks no decree; such as (1) prior mortgages in a foreclosure suit; * * *".

See also *Myers* v. *Wolf,* 162 Tenn. 42, 34 S. W. (2d) 201; and *Reynolds* v. *Chumbley,* 175 Tenn. 496, 510, 135 S. W. (2d) 941.

In responding to the defendant's contention that the Chancellor lacked jurisdiction to vest a remainder in fee in the infant child of the parties in the divorce action, as a part and parcel of the alimony, granted the wife, we think the case of *Cline* v. *Cline,* 186 Tenn. 509, 212 S. W. (2d) 361, settles the question in favor of the child. In the Cline case the child was not a party to the cause. The decree for divorce dissolved the estate by the entirety and the parties held it as tenants in common. The Chancery Court "had jurisdiction to award to wife husband's share of personal property previously held by the parties as tenants by the entirety", also to award to the minor child the "father's interest in realty previously held by the parties as tenants by the entirety. Williams' Code, Section 8446." *Cline* v. *Cline,* supra.

We think, as did the Court of Appeals, that if the Chancery Court had jurisdiction to award the entire interest in the father's land to the child, it had jurisdiction to award a remainder interest. It rested within the sound discretion of the Chancellor and his decree in this regard was not subject to collateral attack.

568

■ A decree cannot be collaterally attacked unless it is *void on its face. Davis* v. *Davis,* 190 Tenn. 561, 230 S. W. (2d) 1002; *New York Casualty Co.* v. *Lawson,* 160 Tenn. 329, 24 S. W. (2d) 881; *Massachusetts Bonding Co.* v. *McLemore,* 4 Tenn. Civ. App. 633.

■ ■ The Court of Appeals in dealing with the title which the mother and step-father of complainant acquired by virtue of the foreclosure sale, and deed to them in fee simple as tenants by the entirety, held that they did not thereby *hold the property adversely to the remainderman.*

"A life tenant may be a purchaser at a sale to satisfy an encumbrance; but neither a life tenant nor one claiming under him, who allows the property to be sold for taxes or the satisfaction of an encumbrance, or the interest thereon, can acquire a title adverse to the remainderman or reversioner by purchasing at the sale himself, or through an intermediary, or by obtaining a conveyance of the title acquired by another purchaser at such sale. Such a transaction amounts simply to a payment or redemption." 31 C. J. S., Estates, Sec. 35, p. 44.

We think the foregoing is unquestionably the rule of law in Tennessee. It finds support in *Miller* v. *Gratz,* 3 Tenn. App. 498; *McGee* v. *Carter,* 31 Tenn. App. 141, 148, 212 S. W. (2d) 902.

■ Contrary to the insistence of the petitioner's counsel we are confident the holding in *West* v. *Moore,* 193 Tenn. 431, 246 S. W. (2d) 74; and *Wallace* v. *McPherson,* 187 Tenn. 333, 214 S. W. (2d) 50, does not warrant the conclusion in the case at bar that the life tenant's interest is held adversely to the remainderman. In the West case the parties claimed title under different in-

struments. In other words, the widow claimed a life estate under the will while the complainants asserted a fee simple under a deed to their father. In the Wallace case the contest was between tenants in common. Of course, the doctrine of ''ouster'' by one tenant in common as against another, thus permitting him to hold adversely to his co-tenant, and thus start the running of the statute of limitations, is sustained by all the authorities. *Wallace* v. *McPherson,* supra. But the rule has no application as between a life tenant and remaindermen.

We think it is a settled rule of law in this State that, ''Every owner of a life estate is a quasi trustee for the remainderman, and can legally do nothing to the prejudice or destruction of his interest.'' See many cases cited in Vol. 10, Encyclopedic Digest of Tennessee Reports, pp. 756, 757.

Contention is made by the petitioners (1) that the present claimants of the property and their immediate predecessors in title are innocent purchasers, and that the Court of Appeals erred in holding that the statute of limitations did not run against the respondent. The following cases hold that the statute does not run against a remainderman during the life of the life tenant. *Teague* v. *Sowder,* 121 Tenn. 132, 114 S. W. 484, 489, wherein the Court held:

''The principle is well expressed in *McCorry's Heirs* v. *King's Heirs,* 3 Humph. [267] 275, 39 Am. Dec. 165, as follows:

'' 'But a remainderman or reversioner has no right or power to bring an action; he is not excused therefrom, for he cannot do it at all. His omission of it is no neglect; his postponement of it is no laches. His right to an action has not yet accrued. He can-

not during the time of the tenant for life lose his estate or be barred of his right by the fault or wrong neglect or laches of the owner of the particular estate.' *Marr's Heirs* v. *Gilliam,* 1 Cold. [488] 502; *McBroom* v. *Whitfield,* 108 Tenn. 422, 67 S. W. 794; *Dodd* v. *Benthal,* 4 Heisk. [601] 608; *Aiken* v. *Suttle,* 4 Lea [103] 109.''

See also *Templeton* v. *Twitty,* 88 Tenn. 595, 14 S. W. 435; *Carver* v. *Maxwell,* 110 Tenn. 75, 71 S. W. 752; *Smith* v. *Cross,* 125 Tenn. 159, 140 S. W. 1060; and *Johnson* v. *Covington,* 148 Tenn. 47, 251 S. W. 893.

Now in the case at bar it appears that the petitioners and the respondent deraign title to the land from a common source, i.e., the decree in the divorce case of Edwards v. Edwards. All who later purchased from the mother and step-father of the remainderman had constructive notice of the title. The present owners, and petitioners herein, cannot claim to be innocent purchasers, in fact they are not. Contention is made, however, that the mother and father, vendees under the Trustee's sale, thereby renounced their title by virtue of the divorce decree; that the Trustee's deed, duly recorded, ''stood as notice that the purchasers were claiming the fee thereunder''. It is urged upon us that the mother and step-father, having purchased at the Trustee's sale, ''would have held the property in constructive or implied trust for the benefit of the complainant'' and that ''the statutes of limitations apply to such trusts''.

The authorities fully sustain the proposition that the mother and step-father of the complainant held title under the Trustee's deed in trust for their infant son, and they could do nothing to prejudice his rights. It is

not conceivable that they could hold the property in trust for him and at the same time hold it subject to the claim of a subsequent purchaser to the "prejudice and destruction" of the remainder interest. The implied trust in favor of the remainderman would of necessity continue in his favor until the latter's right of action was barred by the statute.

In support of their contention that the statute is tolled in the case at bar the petitioners rely upon *Quarles* v. *Arthur,* 33 Tenn. App. 291, 231 S. W. (2d) 589, opinion by McAmis, J., wherein it was held:

"The possession of life tenant or one deriving his title and possession from life tenant does not become adverse to remaindermen unless life estate is renounced and notice is clearly conveyed to remaindermen that property is held or claimed adversely and not under life tenancy."

The opinion goes on to hold that notice of the renunciation of the life estate must be "clearly conveyed to the *remaindermen* that the property is held or claimed adversely and not under the life tenancy"; "The life tenant or his *conveyee* must not only disclose *to the remaindermen* the basis of his claim, *Superior Oil Corp.* v. *Alcorn,* 242 Ky. 814, 47 S. W. (2d) 973, but there must be *some clear and positive* overt act or express notice, *Trimble* v. *Gordon,* 270 Ky. 476, 109 S. W. (2d) 1217, 1219, to start the running of the statute." (Emphasis supplied.)

The authority which the Court of Appeals cites, *Superior Oil Corp.* v. *Alcorn,* supra, in support of its holding that "title and possession of a life tenant does not become adverse as to the remaindermen *unless the life estate is renounced*" is fully explained in the Kentucky Court of Appeals' opinion, as follows: that the life tenant acquires some color of title incompatible with the

existence of a life estate and a remainder estate. It is then and only then and when the remainderman knows of such entry and holding and possession that the remainderman's cause of action accrues. The Kentucky court further holds that an attempted conveyance of the fee by a tenant by the curtesy is not sufficient to start the running of the statute. It thus appears from the foregoing statement as to what constitutes the renunciation of a life estate that the holding in *Quarles* v. *Arthur,* supra, does not control the case at bar.

The cases cited on petitioner's brief in support of the theory that the statute of limitations may run against an implied or constructive trust are applicable only where the defrauded remaindermen are *sui juris,* and not to an infant, as in the instant case, who can assert no right or title during his disability, or at any time during the life of the life tenant.

There is no merit in the contention that this action is barred by laches, or negligence of the remainderman. The defendants have not been prejudiced by his failure to sooner claim title to the land. He was eighteen (18) or twenty (20) years of age before he knew of his interest in the land. The right to sue under the Declaratory Judgment Act is not mandatory, and was available to the petitioners as well as the respondent. No prejudicial inference can be drawn by reason of any failure by either party to invoke its provisions.

The assignments of error are overruled and the judgment of the Court of Appeals is in all things affirmed. The case is remanded to the Chancery Court for enforcement of the decree and such other orders consistent with this opinion which may be necessary for a final decree.